# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 06-710 |
| BILIAL SHABAZZ | : | CIVIL NO. 10- |

### GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 AND MOTION TO DISMISS PETITIONER'S *PRO SE* MOTION FOR LEAVE TO FILE AMENDMENTS TO PENDING MOTION UNDER 28 U.S.C. § 2255

## I.   INTRODUCTION

Petitioner Bilial Shabazz ("Shabazz"), convicted in 2007 of conspiracy to commit a Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); aiding and abetting a Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2; and aiding and abetting the using and carrying of firearms during and in relation to a crime of violence, that is, Hobbs Act robbery, in violation of 18 U.S.C. §§ 924(c)(1) and 2; has filed a counselled motion to vacate his sentence pursuant to 28 U.S.C. § 2255. The motion is an unelaborated laundry list of claims: a putative discovery violation, ineffective representation by trial counsel, and an unspecified ineffective appellate representation. The defense has not - nor could it - supplied any argument or case law authority why this list of claims might warrant a hearing, much less collateral relief from the judgment of sentence. None of the defense claims withstand scrutiny, and the motion and a hearing on it should, therefore, be denied.

First, Shabazz incorrectly contends that certain photographs developed from disposable cameras were not produced in discovery. Second, Shabazz alleges that his trial counsel was ineffective for: 1) stipulating to the admission of wire transfer documentation; 2) failing to request and demand copies of the photographs from disposable cameras; 3) failing to investigate certain witnesses or present a defense regarding Shabazz' having allegedly shaved his

beard before the robbery; 4) failing to call co-conspirator Christopher Young; 5) failing to file a motion to suppress or object to certain handwritten letters by Shabazz; 6) failing adequately to cross-examine co-conspirator Bruce Johnson and failing to object to his identification of individuals from still photographs; 7) failing adequately to argue the motion to suppress Shabazz' statement to law enforcement; 8) failing to object to:  bullets introduced as evidence; the Government's opening statement; the introduction of cellphone records; Ms. Rankin's testimony regarding an abortion; and FBI Special Agent Majarowitz' lay opinion regarding the resemblance of co-conspirator Christopher Young and Mr. Rigney; 9) withdrawing a motion to disclose a confidential informant; 10) failing to request proffer notes of Shelly Young; 11) failing to question certain witnesses regarding the amount of time they were incarcerated together; and 12) failing to object to co-conspirator's testimony regarding video surveillance.  Finally, Shabazz makes a bald and therefore incomprehendible allegation that his appellate counsel was ineffective.

All of these claims are without merit and should be denied.  These ineffective assistance claims may be denied based upon the existing record and no hearing is necessary.

## II.    PROCEDURAL HISTORY

On December 14, 2006, a grand jury in the Eastern District of Pennsylvania returned an indictment of defendant Bilial Shabazz, and three co-conspirators -- Christopher Young, Steven Patton, and Bruce Johnson -- charging them with conspiracy to commit a Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count One); aiding and abetting a Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2 (Count Two); and aiding and abetting the using and carrying of firearms during and in relation to a crime of violence, that is, Hobbs Act robbery, in violation of 18 U.S.C. §§ 924(c)(1) and 2 (Count Three).  Represented by court-appointed counsel, Constance Mary Clarke, Esquire, Shabazz proceeded to trial before a jury presided over by this Court.  The jury returned guilty verdicts on all counts.

Shabazz hired a new attorney, Mark Greenberg, Esquire, for sentencing and

appeal.  On April 16, 2008, Shabazz was sentenced to 240 months imprisonment on Counts One and Two and a consecutive 120-month term of imprisonment on Count Three, for a total of 360 months imprisonment.  This Court also imposed three years supervised release, restitution of $334,763 (to be paid jointly and severally with Shabazz' co-defendants), and a special assessment of $300.  Shabazz filed a timely appeal.

On appeal, Shabazz raised four issues, including whether this Court erred in admitting into evidence Shabazz's statements to a police detective and whether the Court abused its discretion in allowing Steven Patton, a co-conspirator who participated in the robbery, to identify Shabazz and the other participants in the surveillance video and photographs.

On May 8, 2009, the Third Circuit affirmed Shabazz' conviction in a precedential opinion.[1]  United States v. Shabazz, 564 F.3d 280 (3d Cir. 2009).  Pertinently to Shabazz' § 2255 motion, the Third Circuit declined to review this Court's denial of Shabazz's pre-trial motion to suppress his statement to a police detective that Shabazz had "plenty more" cash than the $2,400 found in his wallet because, the court held, admission of the statement was, if error at all, harmless beyond a reasonable doubt.  Id. at 286 (harmless error standard "easily met" in this case).  Second, the court held that this Court properly permitted Patton to identify Shabazz in the surveillance video of the robbery and in a still photograph from the video and that the Court appropriately limited Patton's "narration of the video to those incidents to which Patton was an eyewitness."  Id. at 287.

Represented by newly-retained counsel, Shabazz thereafter filed this timely § 2255 petition on August 2, 2010.

## III.    FACTUAL SUMMARY

### A.    The Robbery.

On December 3, 2006, at approximately 2:30 a.m., defendant Bilial Shabazz,

---

[1]  Shabazz mailed a notice that he intended to seek a writ of certiorai to the United States Supreme Court on May 6, 2009.

along with co-conspirators Christopher Young, Steven Patton, and Bruce Johnson, robbed the Wal-Mart located at 4640 Roosevelt Boulevard in Philadelphia, Pennsylvania.  App. 45-95, 137-182.[2]  During the course of the armed robbery, Shabazz and Young brandished their guns, forced employee Richard Tate to the floor, and bound his ankles and hands with duct tape.  App. 60-61, 237-38.  Shabazz and Young fled the scene after stealing $351,563.  App. 88-89.

Sometime prior to December 3, 2006, Johnson and Patton, who were both assistant managers at Wal-Mart stores, discussed the recent robbery of a Wal-Mart store and the possibility of committing such a robbery themselves.  App. 44, 138.  At the time, Johnson was an assistant manager of a Wal-Mart store in Cherry Hill, New Jersey, while Patton was an assistant manager at the store located at 4640 Roosevelt Boulevard in Philadelphia, where Johnson had also worked as an assistant manager.  Johnson and Patton decided to rob the Roosevelt Boulevard Wal-Mart, since they were familiar with the store and knew from experience that the store normally took in large amounts of cash on a Saturday in the holiday season.  App. 45-48, 139.  During the following days, as they began to formulate their plan, Johnson told Patton that his brother-in-law, Bilial Shabazz, could help with the robbery.  App. 45, 139-43.

A few days later, Shabazz met Johnson at the Wal-Mart in Cherry Hill where Johnson worked.  App. 140-41.  Janeen Bey, Shabazz's girlfriend, drove Shabazz to the Cherry Hill store.  App. 140-41; Supp. App. 66.  Following this meeting, Johnson arranged for Shabazz and Patton to meet at the McDonald's located at Broad and Hunting Park in Philadelphia to discuss the robbery plans in person.  App. 46-48, 143-44.  At the McDonald's meeting, Shabazz, Johnson, and Patton discussed the plan, including how to deal with the video surveillance cameras, what time of night the robbery should take place, and how many employees would be at the store at that time of night.  App. 48-50, 144-48.  Shabazz stated that he would need to have a second robber with him, and that they would use guns during the robbery in order to make it look

---

[2]  The government cites to the Joint Appendix and Supplemental Appendix filed with the Third Circuit and will deliver a hard copy of each to Chambers.

real for the surveillance cameras.  App. 146-48.  Shabazz recruited Young to assist them in the robbery.

On or about Friday, December 1, 2006, Shabazz introduced Young to Johnson, whom Johnson recognized as a former classmate at Lincoln High School.  App. 149.  Shabazz, Young, and Johnson finalized their plans for the robbery, which was to occur that Sunday morning at approximately 2:30 a.m., when the night shift workers would be on break and Patton could let Shabazz and Young into the store.  App. 151.  Johnson gave both Shabazz and Young Wal-Mart smocks to carry over their shoulders as they entered the store.  App. 81, 147, 152-53, 235-36.

On Saturday, December 2, 2006, Patton told Johnson that he did not want to go through with the robbery; however, when he learned that Johnson was going to go through with the robbery with or without his help, Patton agreed to stay involved.  App. 51-53, 151-56.  Johnson was  in telephone contact with Shabazz throughout the evening, calling Shabazz on his cell phone.[3]  App. 179-82.  At approximately 1:57 a.m., Johnson called Patton to let him know that Shabazz and Young would be in the parking lot shortly thereafter.  App. 58, 180.  At approximately 2:15 a.m., Patton unlocked the front doors and let Shabazz and Young into the store.  App. 53.  At this same time, Richard Tate, a Wal-Mart employee, came to the front register to ask Patton to cash him out.  App. 59, 235.  Shabazz and Young took Tate and Patton at gunpoint to the back room where the safe was located.  App. 60-61, 237.  Shabazz and Young ordered Patton to open the safe, and ordered Tate to get down on the floor face down.  App. 61, 237.  Young then duct-taped Tate's ankles, hands, and mouth.  App. 61, 237-38.  After the safe was opened, in order to make it look like Patton was not involved, Shabazz and Young ordered Patton to the floor and duct taped his hands.  App. 61.  Shabazz and Young grabbed the money from the safe and stuffed it in a trash bag and in their pants.  App. 85-86.  Before leaving,

_____

[3]  The government presented cell site evidence for Shabazz's cell phone showing that Shabazz's cell phone was used around the time of the robbery, and the calls bounced off a cell site tower in the Wal-Mart's parking lot.  Supp. App. 95-127, 157-98.

Shabazz and Young pulled the store's phone out of the wall, and fled from the store with approximately $351,563.  App. 86-89; Supp. App. 90-91.

Shortly thereafter, Patton was able to free himself and Tate, and reported the robbery to the police.  App. 61-62.  Patton was interviewed and described the events as if he were a victim, but after viewing surveillance video, he admitted his involvement in the robbery and implicated his fellow assistant manager, Johnson.  App. 62-64.

Johnson was arrested later that morning.  App. 160-61.  Johnson also admitted his involvement and identified Shabazz, and later Young, as the two robbers.  App. 161-65.  In addition, Johnson provided a cell phone number for Shabazz.  App. 166.

Richard Tate, the Wal-Mart employee who had been forced to the back room and duct-taped during the robbery, was shown a photo array on December 4, 2006, but did not identify anyone in this array.[4]  Tate was shown a second array on December 7, 2006, and promptly identified Shabazz as one of the robbers.

Law enforcement officers attempted to locate Shabazz and started to track the cell phone number provided by Johnson.  Supp. App. 165.  Within days of the armed robbery, Shabazz asked his girlfriend, Janeen Bey, to get him a new cell phone number.  Supp. App. 69. From December 3, 2006 through February 1, 2007, Shabazz changed cell phone numbers three different times.  Supp. App. 165-67, 148-55.  Finally, on February 1, 2007, law enforcement officers were able to track Shabazz's cell phone to Miami, Florida.  Supp. App. 168.

FBI agents and Miami-Dade police officers arrested Shabazz in Miami on February 1, 2007.  App. 278-79.  At the time of his arrest, Shabazz had a fake Pennsylvania driver's license and Social Security card bearing the last name "Coyne."  App. 279-80.

Detective Wayne McCarthy transported Shabazz to the Miami-Dade County Jail for processing.  App. 282.  While Shabazz was surrendering his personal property, which

---

[4]  The first array contained a photograph of Shabazz when he was substantially younger and had no facial hair.  App. 257.

included approximately $2,400 in cash, Detective McCarthy remarked, "That's a lot more money than I carry around in my pocket."  App. 282-83.  Shabazz laughed and said, "Well, there's plenty more where that came from."  App. 283.

While in Miami, Shabazz stayed with Ronneka Rankin, whom he met after his arrival in Miami in December 2006.  App. 289-309.  From December 2006 through February 2007, Rankin retrieved for Shabazz approximately five wire transfers, ranging from approximately $1,000 to approximately $5,000, which had been sent by women in the Philadelphia area.  App. 294-312.  Rankin had photographs of herself and Shabazz taken during his stay in Miami.  App. 322-23.  After his arrest, Shabazz sent Rankin letters apologizing for getting "captured" and asking if she "was with him or not."  App. 334-37.

   B.    The Trial Evidence.

At trial, co-conspirators Patton and Johnson testified about the planning and execution of the robbery and Shabazz's role in the robbery.  During his testimony, Patton reviewed the surveillance video and photographs and identified the events and actors depicted in the video, including himself, Shabazz, and Young, and victim Richard Tate.  App. 76-95; Supp. App. 273-78.  In addition, Patton identified the gun that he saw Shabazz carry during the robbery, and also identified a photograph of Shabazz with the gun in his hand.  App. 89-91; Supp. App. 273.  Shabazz's counsel objected to Patton's testimony that the photograph showed Shabazz with a gun in his hand.  The court overruled the objection, stating  "Well, he's a witness.  You can cross-examine him – but that's what he sees."  App. 91.

Victim Richard Tate also testified at trial.  App. 231-47.  Tate was clearly a reluctant witness, stating that he did not want any further involvement with the case and only came to court because he had been served with a subpoena.  App. 241.  He further testified that after the armed robbery, "I – I felt – I just felt discombobulated.  I don't know what to say."  App. 238.

During his testimony, Tate was questioned about two photographic arrays that he

was shown on two different occasions by law enforcement.  App. 239-40.  He was shown both arrays, and when asked if he had identified anyone in the second array, Tate stated, "Yeah, but, again, I was – I wasn't quite sure if that was the person."  App. 240, 258.  When asked about the identification made in the second array, he stated that "[i]t may look like this guy.  I'm not sure. You know what I mean?"  App. 247.[5]

Detective Severa, who showed Tate the second photo array, testified that Tate had not reported any uncertainty when he identified Shabazz.  Detective Severa stated that he told Tate that "the person may or may not be in the photo array, that if he does see him, to pick him out, and that if he's not sure, then not to pick anyone out."  App. 258.  Severa said that Tate immediately and without hesitation identified the photo of Shabazz, and did not in any way indicate that he was uncertain about the identification.  Id.  Detective Severa further testified that Tate had been shaken up by the robbery, explaining that when he first met with Tate four days after the robbery, "he was still very shaken up about the incident, and actually said he was going to seek some counseling."  App. 250-51.

The government also introduced cell phone records that showed the numerous calls between Shabazz and his co-conspirators prior to and immediately after the robbery, and cell site evidence showing that Shabazz's cell phone was used in the Wal-Mart parking lot at the time of the armed robbery.  Cell phone records further confirmed that Shabazz switched cell phone numbers following the robbery.  Janeen Bey testified that she helped Shabazz get a new cell phone number just days after the armed robbery, and Ronneka Rankin testified about her association with Shabazz while he was in Miami, including the wire transfers he received from Philadelphia.

---

[5]  Tate was also confused about the timing of his review of the photo arrays, as he initially said he was shown both arrays on the same day, and not until his attention was drawn to the dates and the fact that different detectives were involved did he recall that he was shown the arrays on different days.  App. 244-46.

## IV.    ARGUMENT

### A.    The Government Made the Photographs Available in Discovery.

Shabazz incorrectly contends that photographs developed from disposable cameras turned over to the government by Ronneka Rankin were not supplied to the defense in discovery.  Pet.'s Mot. ¶¶ 21-24.  On June 7, 2007, the government notified defense counsel that photographs had been developed from six disposable cameras turned over by Ms. Rankin.  See Discovery Letter dated June 7, 2007 at Exhibit A-2.  The government requested that defense counsel make an appointment to review these photographs.[6]

After receiving this discovery letter, Ms. Clarke scheduled an appointment with the government and reviewed all of the photographs from the disposable cameras.  See Clarke Affidavit at Exhibit A, ¶ 5.  Ms. Clarke also asked to see the photographs and review them with Shabazz in the courtroom, and the government complied with this request.  See Clarke Affidavit at Exhibit A, ¶ 5.  The government used certain photographs during its case-in-chief.  Shabazz also had the opportunity to use any of the photographs if he chose to do so during the trial. Shabazz, however, never discussed with his attorney any desire to use any of the photographs with his attorney.  See Clarke Affidavit at Exhibit A, ¶ 5.  Nothing in the photographs was potentially helpful to the defense, as Ms. Clarke and her client recognized after reviewing them.

Therefore, there is absolutely no basis for Shabazz's allegation that the government failed to provide defense counsel with these photographs.  There is no violation of Shabazz's constitutional rights and this claim should be denied.

### B.    Trial Counsel Was not Ineffective.

Shabazz alleges that trial counsel, Constance Mary Clarke, Esquire, was ineffective for the following reasons:

1)    stipulating to the admission of wire transfer documentation;

---

[6] The government did not copy the photographs because some of the photographs were pornographic in nature.  However, defense counsel was permitted to review all of the photographs including those that were considered pornographic.

2)      failing to request and demand copies of the photographs from disposal
        cameras;

3)      failing to investigate certain witnesses or present a defense regarding
        Shabazz' physical description at the time of the robbery;

4)      failing to call co-conspirator Christopher Young;

5)      failing to file a motion to suppress or object to certain handwritten letters
        written by Shabazz;

6)      failing to adequately cross-examine co-conspirator Bruce Johnson and
        failing to object to his identification of individuals from still photographs;

7)      failing to adequately argue the motion to suppress Shabazz' statement to
        law enforcement;

8)      failing to object to the following:  bullets introduced as evidence;  the
        government's opening statement; the introduction of certain cellphone
        records; Ms. Rankin's testimony regarding an abortion; and Detective
        Majorowitz' lay opinion regarding the resemblance of co-conspirator
        Christopher Young and Mr. Rigney;

9)      withdrawing a motion to disclose a confidential informant;

10)     failing to request proffer notes of Shelly Young;

11)     failing to question certain witnesses regarding the amount of time they
        were incarcerated together; and

12)     failing to object to co-conspirator's testimony regarding video
        surveillance.

See Pet.'s Mot. ¶¶ 28(a)-(r).

        For Shabazz to show that his counsel was ineffective, in violation of the Sixth

Amendment, he must satisfy the two-part test set forth in Strickland v. Washington, 466 U.S. 668

(1984).  First, he must show that counsel's performance was constitutionally deficient.  This

-10-

requires a showing that counsel made errors so egregious that she was not functioning as the "counsel guaranteed the defendant by the Sixth Amendment."  Second, Shabazz must show that the deficient performance prejudiced the defense.  To prove prejudice, which it is his burden to do, Shabazz "must show that there is some reasonable probability that, but for counsel's unprofessional errors, the result would have been different."  Id. at 687, 694.

Shabazz's claim of ineffective assistance of counsel will fail unless he affirmatively demonstrates both attorney error and resulting prejudice by alleging facts or specific details to identify precisely how his attorney failed to fulfill her obligations.  See Spillers v. Lockhart, 802 F.2d 1007, 1010 (8th Cir. 1986) (citing Machibroda v. United States, 368 U.S. 487, 495, (1962)).  Counsel cannot be ineffective for failing to raise meritless claims, and counsel's strategic choices are reviewed with a strong presumption of correctness.  United States v. Martin, No. 05-2937, 2008 WL 241356, at *3 (3d Cir., Jan. 30, 2008) (not precedential); Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996).

To gain relief in this collateral challenge under 28 U.S.C. § 2255, Shabazz must show "a good deal more than would be sufficient on a direct appeal from his sentence."  United States v. Pollard, 959 F.2d 1011, 1020 (D.C. Cir. 1992).  This extraordinary and disfavored relief is warranted only if the Court determines that "the challenged sentence resulted from 'a fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure."  Id. (quoting Fed. R. Crim. P. 32, Advisory Committee's Note on 1983 Amendment).

In deciding whether the performance of trial counsel was so deficient that counsel was not functioning as the counsel guaranteed by the Sixth Amendment, the proper measure of attorney performance is reasonableness under prevailing professional norms.  Lewis v. Mazurkiewicz, 915 F.2d 106, 111 (3d Cir. 1990).  A defendant must show that counsel's performance fell "outside the wide range of professionally competent assistance."  United States v. DeRewal, 10 F.3d 100, 104 (3d Cir. 1993).  The Supreme Court has cautioned that "judicial

scrutiny of counsel's performance must be highly deferential" and that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  Additionally, a reviewing court should be highly deferential to those choices that are arguably dictated by a reasonable trial strategy.  See Rogers v. Zant, 13 F.3d 384, 386-87 (11th Cir. 1984).  Neither a defendant's disagreement with trial strategy nor his generalized disappointment with the level of representation will suffice to establish a claim of ineffective assistance.  Instead, "[t]he benchmark for judging any claim of ineffective assistance of counsel must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. " Strickland, 466 U.S. at 686.

Even if counsel's performance was deficient, which it was not in this case, the defendant must also show that counsel's performance prejudiced him, which Shabazz cannot do here.  To show prejudice, the defendant must do more than make conclusory allegations of prejudice; he must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991); Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).  A "reasonable probability" is more than a theoretical possibility.  It is a "probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Applying these standards to this case, it is clear that Shabazz's claims are without merit.  Shabazz does not cite any cases to support any of his contentions that defense counsel was ineffective.  Further, Shabazz cannot show that he suffered any prejudice at trial for any of the alleged errors.  As the Court knows from presiding at trial, Ms. Clarke acted well within the bounds of constitutionally accepted criminal defense practice in her investigation and defense of Shabazz's case.  Her strategy was sound, her execution more than competent, and her judgment was savvy.

**1.     Counsel Was Not Ineffective in Stipulating to the Admission of Wire Transfer Documentation and this Stipulation Did Not Result in Any Prejudice.**

Shabazz's contention that counsel was ineffective in stipulating to the admission of wire transfer evidence, as the evidence was not self authenticating, ignores the fact that Shabazz himself agreed to this sensible stipulation.  Pet.'s Mot. ¶ 28(a).  Prior to and to streamline trial, the government provided defense counsel with proposed stipulations, which included among other standard and frequently used stipulations, stipulating to the wire transfer evidence.  Counsel reviewed these proposed stipulations with Shabazz who agreed to enter into the stipulations.  See Clarke Affidavit at Exhibit A, ¶ 4, & Stipulations at Exhibit A-1.  Had he not stipulated, he would have senselessly lengthened the trial but would not have advanced any legitimate defense as the wire transfer evidence would have been admitted after a cumbersome procedure which would have highlighted it for the jury.

Even if Shabazz had refused the proposed stipulations, defense counsel could have agreed to stipulate to this evidence without being ineffective.  The ability of defense counsel to stipulate to certain things has been upheld by courts as falling under the independent tactical decisions of counsel.  United States ex rel. Hayes v. Johnson, 330 F. Supp. 1115, 1117-18 (E.D. Pa. 1971).  In Johnson, the defendant was charged with burglary of a vehicle and defense counsel stipulated to the victim's ownership of the car *without* the defendant's consent.  The court denied the defendant's request for writ of habeas corpus, finding that defense counsel's decision to stipulate "was not made in a vacuum" and that "[c]ounsel need not consult his client on all matters of trial strategy."  Id. at 1118.  Also relevantly, in Hard v. Stevens, 65 F.R.D. 637, 638-39 (E.D. Pa. 1975), the plaintiff argued that the court erred in admitting certain hospital records that had not been introduced by a proper custodian.  The court denied the plaintiff's motion for a new trial, noting that "facts admitted and stipulations included in the pre-trial order are binding on the parties at trial and may not later be contradicted."  Id. at 639.

Here, Attorney Clarke and Shabazz himself agreed to enter into the stipulations.

Shabazz, therefore, cannot claim that this evidence was admitted over his objection.  Defense counsel and Shabazz' decision to stipulate to this wire transfer documentation was "reasonable considering all the circumstances."  Strickland, 466 U.S. at 688.  The government was prepared to call a custodian of records to introduce the wire transfer evidence.  If forced to testify, this witness would have highlighted this evidence for the jury.  Defense counsel's recommendation to Shabazz to agree to this stipulation (and others) was a sound strategy.  Furthermore, entering into this innocuous stipulation did not prejudice Shabazz in any way given the large amount of evidence against him.  Cf. Shabazz, 564 F.3d at 286 (harmless error standard easily met for far more consequential evidence of Shabazz's statement to a police detective).   This claim of alleged ineffective assistance of counsel must be denied.

### 2.     Counsel Was Not Ineffective in Failing to Request Copies of Photographs from the Disposable Cameras.

Shabazz alleges that Ms. Clarke failed to request and demand copies of photographs the government developed from six disposable cameras turned over by Ms. Rankin.  Pet.'s Mot. ¶ 28(b).  Shabazz also contends that these photographs *may* have contained exculpatory material.  Pet.'s Mot. ¶ 28(b).  There is absolutely no merit to these frivolous allegations: Ms. Clarke and Shabazz reviewed the photographs and wisely chose not to attempt to use them in Shabazz's defense.

As stated above,[7] on June 7, 2007, the government notified defense counsel that photographs had been developed from six disposable cameras turned over by Ms. Rankin.  See Discovery Letter dated June 7, 2007 at Exhibit A-2.  Further, the government requested that defense counsel make an appointment to review these photographs.

After receiving this discovery letter, Ms. Clarke scheduled an appointment with the government and reviewed all of the photographs from the disposable cameras.  See Clarke Affidavit at Exhibit A, ¶ 5.  Ms. Clarke also asked to see the photographs and review them with

---

[7] See supra Section IV, Part A.

-14-

Shabazz in the courtroom, and the government complied with this request.  See Clarke Affidavit at Exhibit A, ¶ 5.  After reviewing the photographs, Shabazz did not inform Ms. Clarke that any of the photographs would be helpful to his defense or that any of the photographs contained any alleged exculpatory material.  See Clarke Affidavit at Exhibit A, ¶ 5.  There is no basis for Shabazz' allegation that his counsel was ineffective for failing to demand copies of photographs he had access to throughout his trial.  This claim should be denied.

### 3.   Counsel Was Not Ineffective for Failing to Investigate Certain Witnesses That She was Never Informed Existed.

Shabazz now contends that his counsel failed properly to investigate potential witnesses and failed to present a defense which would have shown that Shabazz did not have a beard from Thanksgiving 2006 to the time of his arrest in February 2007.  Pet.'s Mot. ¶ 28(c).  Specifically, Shabazz now contends certain witnesses could have testified that Shabazz shaved his beard on Thanksgiving and did not have a beard in December 2006.  Pet.'s Mot. ¶ 28(d).  The trial record conclusively belies this claim.  Tellingly, Shabazz does not mention the fact that his girlfriend Janeen Bey was called as a witness at trial, and yet he did not ask for his attorney to question her regarding his facial hair on Thanksgiving or in December 2006.

Moreover, Ms. Clarke specifically recalls that she hired a private investigator to help her develop the best defense for Shabazz.  See Clarke Affidavit, Exhibit A, ¶ 2.  The investigator was available to interview any potential witnesses.  Attorney Clarke and Shabazz discussed his defense, and Shabazz never provided her with names of any potential witnesses or any alleged defense regarding his beard or lack of a beard on Thanksgiving and in December 2006.  See Clarke Affidavit, Exhibit A, ¶¶ 2 & 3.  As noted above, the trial record belies Shabazz's contrary claim and supports Ms. Clarke's account.  Shabazz cannot now claim his counsel was ineffective when Shabazz never informed counsel of any such witnesses or defense.

Further, it is the law that, with few exceptions, it is trial counsel, not the defendant, who possesses the decision-making power to make determinations that can best be made by lawyers.  While a few decisions, such as trial by jury, or testifying in one's own behalf,

are exclusively the province of the accused, most other decisions belong to the lawyer.  Indeed, a lawyer who did everything her client instructed would probably be doing that client a great disservice.  As the Third Circuit remarked:

> As the commentary to Model Rule of Professional Conduct 1.2(a) states, while a lawyer must abide by a client's decisions concerning the objectives of her representation, a lawyer "is not required to . . . employ means simply because a client may wish that the lawyer do so."

Gov't of Virgin Islands v. Weatherwax, 77 F.3d 1425, 1435 (3d Cir.1996).

Attorney Clarke acted well within the bounds of constitutionally accepted criminal defense practice in her investigation and defense of Shabazz' case.  There is absolutely no basis for Shabazz' claims that Attorney Clarke was ineffective.

### 4.   Counsel Was Not Ineffective for Failing to Call Co-Conspirator Christopher Young Who Initially Cooperated and Gave Damaging Information Regarding Shabazz' Role in the Conspiracy.

Shabazz contends that his counsel was ineffective for failing to call co-conspirator Christopher Young at trial.  Shabazz claims that Young was "ready to testify that Bilial Shabazz was not involved in the crimes in this matter."  Pet.'s Mot. ¶ 28(e).  Shabazz fails to mention, however, that Young initially cooperated with the government and provided damaging information about Shabazz's role in the Hobbs Act Robbery conspiracy which corroborated the cooperating witnesses called by the government during trial.  The jury did not hear this damning evidence but would have had Ms. Clarke blundered into calling Young as a defense witness.

As stated above, with few exceptions, trial counsel, not the defendant, makes decisions about such strategic and tactical matters as whether to call as a witness someone who has previously implicated the defendant in the crime on trial.  Here, Ms. Clarke made a strategic decision not to call co-conspirator Young as witness for the defense.  See Clarke Affidavit, Exhibit A, ¶ 6.  This strategic decision was appropriate and did not constitute ineffective assistance.  Young had entered into a plea agreement with the government and for a period of time had cooperated and provided damaging information about Shabazz' role in the Hobbs Act Robbery conspiracy.  Even if Young would have agreed to testify at all despite his privilege not

-16-

to do so and would have changed his prior statement, thus subjecting himself to a potential perjury prosecution and the certainty of an enhanced sentence, and had testified that Shabazz did not have anything to do with the crimes charged, Young would have had no credibility and his prior inconsistent statement to law enforcement would have been used further to impeach him. As this prior statement would have further corroborated the testimony of the cooperating witnesses heard by the jury, as well as the cellphone evidence and Wal Mart video surveillance, calling Young would have severely harmed any colorable defense available to Ms. Clarke. Ms.Clarke, therefore, prudently and effectively determined not to call Young as a witness.  This decision was certainly a trial strategy within Ms. Clarke's discretion.

        To show prejudice from the decision not to call Young, Shabazz would have to show that his testimony would have changed the outcome of the trial.  See Stewart v. Nix, 31 F.3d 741, 744 (8th Cir. 1994) (holding that "to prove prejudice from a trial attorney's failure to investigate potential witnesses, a petitioner must show that the uncalled witnesses would have testified at trial and that their testimony would probably have changed the outcome of the trial."). Shabazz cannot do this.

        In a similar situation, the Third Circuit specifically approved of trial counsel's strategic decisions to not call alibi witnesses.  McAleese v. Mazurkiewicz, 1 F.3d 159, 175 (3d Cir. 1993).  In McAleese, the court reversed a district court's granting of a habeas corpus petition on the basis of alibi witnesses who were not called and not investigated by defense counsel. After noting that "Strickland emphasizes that a court's evaluation of an attorney's performance must be 'highly deferential' in order to diminish the possible distortions of hindsight" (citation omitted), the Court concluded that counsel's strategic decision was not ineffective assistance, stating, "[T]hat decision reflects sound trial strategy.  Standing alone, [the witness'] testimony would have done little more than bolster McAleese's loose alibi defense . . . .  Trial counsel had built an image of McAleese as a hardworking citizen, and he understandably did not want to risk shattering that image."  Id. at 175.  Ms. Clarke's decision was more clearly effective than this.

-17-

Other courts have rejected many such claims under similar circumstances.  In Cordero v. United States, 253 F. Supp. 2d 173 (D. P.R. 2003), the court rejected the claim where the defendant did not provide adequate information about the alibi for the attorney to investigate, the alibi was later discredited, and the non-specific alibi claim was ruled to be "inadequate on its face."  Id. at 176.  In Sandoval v. United States, No. 04-CV-4056, 2007 WL 2937124, at *3-4 (C.D. Ill., Sep. 26, 2007), the court denied the petition and request for an evidentiary hearing where the defendant told trial counsel about two potential alibi witnesses, but had no name for one, and no address for either witness.  In Rodriguez-Santana v. United States, No. 04-1218 (SEC), 2006 WL 2471515, at *4-5 (D. P.R. Aug. 24, 2006), the court dismissed a petition alleging a failure to investigate an alibi, where defense counsel determined in his professional judgment that such a defense would not work in that case.  The court noted that counsel need not "chase wild factual geese when it appears, in light of informed professional judgment, that a defense is implausible or insubstantial as a matter of law, or, as here, as a matter of fact and of the realities of proof, procedure, and trial tactics."  Id. at *5 (citing Cepolonis v. Ponte, 699 F.2d 573,  575 (1st Cir. 1982).  Again, Shabazz's ineffectiveness claim, unlike the above, is without colorable merit.

Further, in Lema v. United States, 987 F.2d 48, 55 (1st Cir. 1993), the First Circuit held that the "decision to interview potential witnesses, like the decision to present their testimony, must be evaluated in light of whatever trial strategy reasonably competent counsel devised in the context of a particular case."  In addition, the court noted that "[t]he decision to call a particular witness is a strategic one."  Id. at 54.  Likewise, here, the record reveals that Ms. Clarke was well aware of Young's extremely limited potential value and certain great harm as a witness.  Ms. Clarke's judgment, which is entitled to a wide latitude of discretion, was sound.  Using good judgment and sound strategy is the opposite of ineffective representation.

**5.      Counsel Was Not Ineffective in Failing to File a Motion to Suppress or Object to Certain Handwritten letters Written by Shabazz.**

Shabazz also mistakenly contends that his counsel was ineffective for failing to

file a motion to suppress or object to his handwritten letters to Ronneka Rankin.  Pet.'s Mot. ¶ 28(f).  Defeating Shabazz's claim, Ms. Clarke filed a response in opposition to the Government's Motion *in Limine and* objected to the introduction of these letters.[8]  See Defendant's Opposition to Government's 404(b) Motion, at 11-12, attached hereto as <u>Exhibit B.</u>

The Court held argument on the government's motion on August 13, 2007, and ultimately granted in part and denied in part the government's motion.  During the argument the Court made clear that certain evidence included in the government's motion was not 404(b) evidence but rather evidence of consciousness of guilt or *res gestae* which the Court ruled was admissible.  <u>See</u> Motions Hearing Transcript at 18-34 attached hereto as <u>Exhibit C</u>.  Given the Court's consistent rulings regarding specific evidence constituting consciousness of guilt or *res gestae*, defense counsel did not assert any additional argument regarding the inadmissibility of Shabazz' letters.  Given the Court's rulings, this decision actually showed counsel's good judgment.  It certainly does not rise to the level of ineffective assistance of counsel and further did not result in any prejudice given the more than sufficient evidence of Shabazz' guilt in this case.

> **6.    <u>There is No Basis for Shabazz' Claim that Counsel Failed to Adequately Cross-Examine Co-Conspirator Bruce Johnson or Failed to Object to his Identification of Individuals from Still Photographs.</u>**

Shabazz contends that counsel failed adequately to cross-examine Bruce Johnson and failed to object to his identification of certain individuals from still photographs.  Pet.'s Mot. ¶ 28(g) & (n).  As this Court knows, having witnessed the vigorous cross-examination at issue, Ms. Clarke performed in a lawyerly and effective manner, consistently with her professionally sound trial strategy and tactics.  Shabazz' wish that the jury had not credited the witness' testimony is an insufficient basis to allege, much less find, that his counsel was constitutionally

---

[8]  On August 3, 2007, the government filed a Motion *in Limine* to Admit 404(b) Evidence, and specifically sought to introduce certain evidence, including Shabazz's letters to Ms. Rankin asking if she "was with him or not" while he was in custody at the Federal Detention Center.

ineffective.  His contrary contentions are meritless.

Shabazz' allegation that counsel failed to cross-examine Johnson on his criminal record, fleeing to Yeman, and past cooperation is not supported by the record.  Further, there is no basis for Shabazz' argument that his counsel was ineffective for failing to request a copy of Johnson's prior cooperation agreement with the government.  Contrary to Shabazz' allegation, defense counsel conducted a thorough and effective cross-examination of Johnson.  Among other areas, counsel specifically questioned Johnson about what benefits he expected in exchange for his testimony.  App. 216.  Counsel questioned Johnson about his prior federal conviction involving the straw purchases of approximately 35 to 45 firearms.  App. 217.  Counsel also specifically questioned Johnson about his agreement to cooperate in his prior federal case as well as the instant case.  App. 217.  Further, counsel questioned Johnson about the fact he fled to Egypt, specifically Yeman, in order to avoid serving his prior federal sentence.  App. 218.

"Decisions about whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature and generally will not support an ineffective assistance claim."  United States v. Rodriguez, 68 F. App'x 237, 243 (2d Cir. 2003) (internal quotations omitted) (citing Dunham v. Travis, 313 F.3d 724, 732 (2d Cir.2002)); see also Gov't of the Virgin Islands v. Weatherwax, 77 F.3d 1425, 1433 (3d Cir. 1996).  Therefore, claims that counsel failed adequately to cross-examine are analyzed to see whether the alleged deficiency was part of a reasonable trial strategy.  United States v. Berryman, 100 F.3d 1089, 1098 (3d Cir. 1996).  See also United States v. Glover, 153 F.3d 749, 758 (D.C. Cir. 1998) (finding counsel's cross-examination strategy reasonable because it prevented the witness from "explaining away or minimizing the arrest"); Gov't of the Virgin Islands v. Weatherwax, 20 F.3d 572, 579 (3d Cir. 1994) ("'[o]nly when behavior revealed ineptitude, inexperience, lack of preparation or unfamiliarity with basic legal principles did [these] actions amount to ineffective assistance of counsel.") (quoting the commentary to the ABA STANDARDS FOR CRIMINAL JUSTICE: PROSECUTION AND DEFENSE FUNCTION § 4-5.2 (2d ed. 1980 & Supp. 1986)); United States v.

-20-

Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987) ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision. . . . Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are similarly strategic in nature.").  Unless Shabazz can show that counsel's cross-examination decisions were not part of a reasonable trial strategy and that it caused him prejudice sufficient to undermine the integrity of the jury's verdict, his claim must fail.  Here, unlike in Berryman and Weatherwax, counsel performed competently and did nothing to undermine confidence in the outcome of the trial.

In Berryman, the rape victim had given prior inconsistent testimony about the height of her three attackers, which became a critical issue of identification due to the lack of DNA evidence.  Berryman's counsel failed to confront the victim with her prior inconsistent sworn testimony.  Berryman, 100 F.3d at 1098-99.  The Third Circuit affirmed the district court's finding that counsel's failure could not "be justified as a sound trial strategy or a reasonable strategic choice."  Id. at 1098.  Similarly, in Weatherwax, defense counsel failed to take action when a juror carried a newspaper containing an article on the trial into the courtroom.  Weatherwax,  20 F.3d at 579.  The court found this failure fell "below the Strickland objective standard of reasonableness."  Id.  Ms. Clarke's professional conduct throughout her representation of Shabazz as in her cross-examination of Young was the far from these woeful examples of neglectful lawyering.

Furthermore, as with other ineffective assistance of counsel claims, the defendant must meet both prongs of the Strickland test by showing that "the deficient performance prejudiced the defense."  Strickland, 466 U.S. at 687.  Thus, a defendant's ineffective assistance of counsel claim fails if the inadequacy was insufficient to change the outcome of the trial.  See e.g., Derrickson v. Meyers, 177 Fed. App'x. 247, 250 (3d Cir. 2006) (finding defendant had not shown how he was prejudiced by counsel's cross-examination because:  "(a) there were other eyewitnesses who testified that Derrickson shot the victim, (b) when confronted with his

-21-

previous testimony, [the witness]  admitted that it was accurate, and (c) the conflicting statements were brought to the jury's attention and it chose to believe the inculpatory testimony."). Here, Ms. Clarke may not be faulted for the incontrovertibly strong case against her client. Clarence Darrow could not have "beat" this case.

Finally, counsel certainly used good judgment when she did not object to Johnson's identification of certain individuals from still photographs. These identifications were permitted under the Federal Rules of Evidence, and there was no basis to object. Cf. Shabazz, 564 F.3d at 287 (upholding Patton's similar identifications). If counsel had chosen to object she would have been overruled and would have drawn more attention to certain exhibits being shown to the jury. Failure to object, like the failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel. See Kimmelman, 477 U.S. at 384. If the record does not disclose trial counsel's strategy, the court must consider any sound strategy that could have supported counsel's actions. See Luparella v. United States, 335 F. App'x 212, 216 (3d Cir. 2009). The presumption need not be resorted to here as Ms. Clarke was not obliged, on pain of being convicted of constitutional ineffectiveness, to make the suggested, pointless objection. Ms. Clarke's representation was in this respect, as in her cross examination of Johnson, competent and effective.

### 7.     Counsel Effectively Argued the Motion to Suppress

Shabazz contends that counsel failed adequately to argue his motion to suppress statements made to task force officers after his arrest in Florida and failed to subpoena certain witnesses, in particular Officer Stewart. Pet.'s Mot. ¶ 28(h). Again, these claims fail to establish ineffective assistance of counsel as the record clearly demonstrates that counsel effectively argued the motion to suppress.

The Court heard argument on Shabazz' motion to suppress on August 13, 2007. App. 259-74. The government called Task Force Officer Wayne McCarthy, who was present and heard Shabazz' statements, and Attorney Clarke conducted a thorough cross-examination. App.

259-74.  Although Task Force Officer Stewart was available to testify, neither the government
nor defense called him as a witness.

As stated previously, with no exception applicable here, trial counsel, not the
defendant, has the power to make those determinations that can best be made by lawyers.  Here
Ms. Clarke made a sound strategic decision not to call the second task force officer during the
motion to suppress hearing.  See Clarke Affidavit, Exhibit A, ¶ 10.  This strategic decision was
appropriate and did not constitute ineffective assistance.  Ms. Clarke had the FBI 302s detailing
Shabazz' statements which were heard by both task force officers.  Calling the second task force
officer only would have corroborated Officer McCarthy's testimony.  Ms. Clarke correctly
determined that there was no benefit to calling Officer Stewart as a witness.  This decision was
certainly a sound strategy.

To show the requisite prejudice by the decision not to call Officer Stewart,
Shabazz would have to show that the officer's testimony would have changed the outcome of the
motion to suppress and then the trial.  See Stewart v. Nix, 31 F.3d 741, 744 (8th Cir. 1994)
(holding that "to prove prejudice from a trial attorney's failure to investigate potential witnesses,
a petitioner must show that the uncalled witnesses would have testified at trial and that their
testimony would probably have changed the outcome of the trial.").  Shabazz cannot do this.  As
the Third Circuit held, even if error, admission of the statement was harmless beyond a
reasonable doubt.  Shabazz, 564 F.3d at 286.  On collateral review, Shabazz' claim must be
denied.

**8.**     **Counsel Was Not Ineffective for Failing to Object to Certain Evidence
and Statements Made During Trial.**

Shabazz contends that his counsel was ineffective for failing to object to the
following: (1) the bullets seized from Christopher Young's hotel room (Pet.'s Mot. ¶ 28(i)); (2)
the government's statement during opening that Bruce Johnson knew "just the man for the job"
and "knew exactly who to get involved" (Pet.'s Mot. 28(o)); (3) the introduction of cellphone
records (Pet.'s Mot. 28(p)); (4) Ms. Rankin's testimony regarding an abortion (Pet's Mot. ¶

28(q)); and (5) Detective Majorowitz' lay opinion regarding the resemblance of co-conspirator Christopher Young and Mr. Rigney (Pet.'s Mot. ¶ 28(r)).  As previously stated, a failure to object, like the failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel.  See Kimmelman, 477 U.S. at 384.  If the record does not disclose trial counsel's strategy, the Court must consider any sound strategy that could have supported counsel's actions.  See Luparella, 335 F. App'x at  216.  Though tedious to work through, the answer to this piling-up of frivolous claims is easy: none, considered one by one or together, undermine the presumption, much less the fact, of Ms. Clarke's effectiveness.

Trial counsel, not the client, possesses the decision-making discretion to make or forego objections.  Collateral appeal counsel, combing through a cold record[9] on behalf of a client justly serving a lengthy prison sentence, may be able imagine that an objection might have been made at innumerable points during the trial.  This kind of nitpicking second-guessing is insufficient, however, to overcome the simple fact, known to those who participated in the trial and apparent when the record is reviewed according trial counsel's performance the deference the Supreme Court requires, that Ms. Clarke's performance was competent and professionally sound. A lawyer who did everything the client instructed, much less later wishes had been done, would probably be doing or have done that client a great disservice.  The Constitution does not require lawyers to make pointless objections.  Ms. Clarke acted well within the bounds of constitutionally accepted criminal defense practice.  Shabazz cannot therefore overcome the Strickland presumption of counsel's competence.

First, as to the bullets seized from Christopher Young's hotel room, Ms. Clarke reasonably concluded that any objection to this evidence would have been denied.  Even if such an objection might have been granted, foregoing it did not constitute ineffective assistance.  In fact, Ms. Clarke could reasonably have concluded that the evidence of these bullets prejudiced only Young since he was in sole possession of the bullets.  Ms. Clarke could also have

---

[9] As will be seen below, present counsel often gets the cold record wrong.

determined that any objection to these bullets would only have highlighted to the jury that Shabazz was concerned about this evidence despite its connection not to him but to Young. Further, Ms. Clarke turned this evidence to Shabazz' advantage by arguing that bullets were seized from Young, and yet, no evidence of bullets or other weapons was seized from Shabazz. Ms. Clarke's "failure" to object to this evidence was not ineffective and did not prejudice Shabazz in any way.

Second, there was no error to object to in the government's opening statement. During her opening statement, government counsel stated that Bruce Johnson knew "just the man for the job" and knew "exactly who to get involved."  Government counsel had specifically addressed these statements with the Court prior to opening statements.  See Motions Hearing Transcript at 32-33 attached hereto as Exhibit C.  The Court's ruling permitting these statements was clearly correct.  Ms. Clarke was thus well aware that government counsel was stating only what the Court had approved in its prior ruling, and, therefore, there was no basis to object.

Third, Ms. Clarke did not object to the introduction of cellphone records because again there was no basis to object.  Shabazz and Ms. Clarke had stipulated to these records prior to the start of trial.  As stated earlier, even if Shabazz had not stipulated to these records, defense counsel still could have agreed to stipulate to this evidence without being ineffective.  The ability of defense counsel to stipulate to certain things has been upheld by courts as falling under the independent tactical decisions of counsel.  Johnson, 330 F. Supp. at 1117.  In any case, the records would have been admitted in evidence had the stipulation been refused.

Fourth, Ms. Clarke made a reasonable strategic decision when she chose not to object to Ms. Rankin's testimony that she had an abortion.  See Clarke Affidavit, Exhibit A, ¶ 9. Ms. Clarke wanted to show that Ms. Rankin had lied to Shabazz and thus to discredit Ms. Rankin's testimony.  This was certainly within the bounds of a reasonable trial strategy.

Fifth, Ms. Clarke acted reasonably when she did not object to Detective Majorowitz's lay opinion testimony regarding the resemblance between Christopher Young and

-25-

Mr. Rigney. This comparison is permitted by the Federal Rule of Evidence 701, and there was no basis for such an objection. If counsel had chosen to object, she would have been overruled. Even if there were a basis to object, it would have been pointless to do so as the resemblance was undeniable (as the detective said, the likeness was "frightening"), and the detective's making it was not prejudicial at all and, therefore, not so prejudicial as to undermine confidence in the jury's verdict.

The Constitution does not require lawyers to make pointless objections. Professional standards require just the opposite. Ms. Clarke acted well within the bounds of constitutionally accepted criminal defense practice in her defense of Shabazz' case. Shabazz cannot overcome the <u>Strickland</u> presumption of counsel's competence. Ms. Clarke's decision not to object in all of the above situations was reasonable and soundly strategic. There is no basis for any of these claims.

**9.    There was No Error in Counsel's Decision to Withdraw Her Motion to Disclose a Confidential Informant After the Court Heard Argument from Counsel.**

Shabazz also argues that Ms. Clarke was ineffective when she ultimately withdrew her motion seeking disclosure of a confidential informant. Shabazz does not disclose the fact that Ms. Clarke effectively argued this motion before the Court on August 13, 2007. During the discussion between counsel and the Court, it became clear that the Court was not going to permit disclosure of this information. <u>See</u> Motions Hearing Transcript at 11-16 attached hereto as <u>Exhibit C</u>. The confidential informant was used to locate co-conspirator Christopher Young, not Shabazz. Although the confidential informant identified Shabazz, the government stated that it would not be relying on the confidential informant for identification of Shabazz. Only after learning of this and seeing that her motion was baseless did Ms. Clarke agree to withdraw the motion. This was certainly a reasonable and sound decision.

**10.**   **Shabazz' Contention that Counsel Failed to Request the Proffer Notes of Shelly Young is Baseless.**

Shabazz asserts that counsel was ineffective for failing to request proffer notes of Shelly Young, Bruce Johnson's wife.  Contrary to Shabazz' allegation, Ms. Clarke requested the proffer notes of Ms. Young as well as other witnesses.  See Defendant's Consolidated Pretrial Motions, at 2, attached hereto as Exhibit D.  The Court addressed this motion on August 13, 2007, prior to the start of trial.  The Court denied the motion as moot after learning that the rough notes had been preserved, the type written statements (including Ms. Young's 302) had been turned over, and all potential Brady and Jencks material had been disclosed by the government.  There is absolutely no basis for Shabazz' contention that counsel failed to request these notes.  This claim must be denied.

**11.**   **Shabazz' Contention that Counsel Failed to Question Certain Witnesses Regarding the Amount of Time they were Incarcerated Together Does Not Constitute Ineffective Assistance.**

Shabazz mistakenly contends that counsel failed to question witnesses on the time they spent together while incarcerated and allegedly plotted to frame Shabazz.  Pet.'s Mot. ¶ 28(l).  Ms. Clarke specifically questioned co-conspirator Steven Patton regarding the time he spent incarcerated with Bruce Johnson.  App. 108-112.  Patton admitted he was in custody for a period of time with his co-conspirator Johnson.  Based on this admission there was no need to subpoena any jail records to confirm this fact.

Ms. Clarke could have also questioned Johnson on this issue but chose not to do so.  This was a sound tactical and strategic decision as Ms. Clarke had effectively made an uncontradicted record of the prisoners having been housed together.  It was certainly reasonable for Ms. Clarke to decide not to pursue this line of questioning with Johnson after getting Patton's responses.  Ms. Clarke knew that to improve the record she would have to call Shabazz as a witness, and Shabazz and Ms. Clarke had decided the best trial strategy was not calling Shabazz

-27-

as a witness at trial. Shabazz cannot show that Ms. Clarke's decision regarding this line of questioning was not part of a reasonable trial strategy or that it caused him any prejudice.  This claim must be denied.

### 12.    The Defendant May Not Relitigate His Objection to Steven Patton's Narration or Identifications of the Video Played to the Jury.

Shabazz' Section 2255 motion attempts to raise again a claim he appealed to the Third Circuit in 2008,  that is, that the Court erred in allowing Patton to identify Shabazz in the surveillance video taken during the robbery, contending that this was impermissible lay witness testimony in violation of Federal Rule of Evidence 701.   Pet.'s Mot. ¶ 28(m).  Where a claim is actually decided on direct review, it cannot be relitigated under Section 2255 except in unusual circumstances, not present here.  See Withrow v. Williams, 507 U.S. 680, 720-21 (1993) (Scalia, J., concurring) (collecting cases); United States v. Perez, 129 F. 3d 255, 260 (2d Cir. 1997); Argencourt v. United States, 78 F.3d 14, 16 n.1 (1st Cir. 1996); Olmstead v. United States, 55 F.3d 316, 319 (7th Cir. 1995); Cabrera v. United States, 972 F.2d 23, 25 (2d Cir. 1992); Barton v. United States, 791 F.2d 265, 267 (2d Cir. 1986) (per curiam) (citing cases); DeRewal, 10 F.3d at 105 n.4; Kastenbaum v. United States, 588 F.2d 138, 139 (5th Cir. 1979) (per curiam); Oliver v. United States, 90 F.3d 177, 180 (6th Cir. 1996); United States v. Keane, 852 F.2d 199, 203 (7th Cir. 1988); Thompson v. United States, 7 F.3d 1377, 1378-79 (8th Cir. 1993) (per curiam); cf. United States v. Scrivner, 189 F.3d 825, 826-27 (9th Cir. 1999).[10]  In attempting to argue that counsel was ineffective for failing to object to this testimony now, Shabazz is merely attempting to relitigate a claim which has already been denied by the Third Circuit and would be denied now as it was before.  See Shabazz, 564 F.3d at 287.

Therefore, none of the alleged errors cited by Shabazz rise to the level of ineffective assistance of counsel and certainly did not result in any cognizable prejudice to

---

[10]  The only notable exception, not here applicable, is an intervening change in the governing substantive law.  Davis v. United States, 417 U.S. 333, 346-47 (1974).

Shabazz where the government's evidence overwhelmingly proved his guilt beyond a reasonable doubt.  As stated, ineffective assistance at trial "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.  A reviewing court may indulge a strong presumption that, under the circumstances, counsel's challenged actions might be considered sound strategy.  Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999).  Every decision Shabazz cites was well within the scope of reasonable trial strategies.  As he cannot, Shabazz does not cite any cases in support of his summary condemnation of Ms. Clarke's representation.  As counsel's conduct was not deficient, much less prejudicial, these claims are all meritless on their face.

Even if the defense claims of unprofessional conduct were arguable, which they are not, it cannot establish the severe prejudice required by the second prong of Strickland, that is, prejudice sufficient to undermine confidence in the verdict because it would probably have been not guilty but for the incompetence of counsel.  As to foregone objections or argument as with omitted evidence, the Court "must assess this evidence in relation to the record as a whole, to determine whether there is a reasonable probability that such evidence, if presented to a jury acting 'conscientiously . . . and impartially,' would have led the jury to have a 'reasonable doubt' respecting [the defendant's] guilt."  United States v. Gray, 878 F.2d 702, 713 (3d Cir. 1989) (citation omitted) (quoting Strickland, 466 U.S. at 695).  As the Third Circuit implicitly recognized in its harmless error finding, the evidence in this case is overwhelming.  It follows that the ineffectiveness alleged here - if it could be established - does not warrant collateral relief.

Cases in which an attorney's performance is deemed inadequate, and yet relief is denied because of the absence of prejudice, are common.  The case law of the Third Circuit includes such decisions as Albrecht v. Horn, 471 F.3d 435, 456-58 (3d Cir. 2006) (trial counsel in a capital case was ineffective in not requesting a limiting instruction regarding evidence of spousal abuse, but, because of the overwhelming evidence of guilt, there was no prejudice); Medina v. DiGuglielmo, 461 F.3d 417, 430-32 (3d Cir. 2006) (although defense counsel was

ineffective in not challenging the competency to testify of a 12-year-old witness, who said that he did not know the difference between telling the truth and a lie, the defendant was not prejudiced, as he had not shown a reasonable probability that the result of the proceeding would have been different had a competency challenge been presented, given the weight of the evidence); Affinito v. Hendricks, 366 F.3d 252, 259-62 (3d Cir. 2004) (defense counsel was ineffective in not providing complete information to defense expert retained to testify regarding diminished capacity, and the trial court gave an erroneous instruction regarding diminished capacity, but the state court permissibly held that the errors were not prejudicial, because the expert's testimony was implausible, and even if amplified would have been subject to strong cross-examination).

Shabazz fails to and cannot establish any prejudice from the alleged failures cited in his motion.  Therefore, Shabazz' claim of purported ineffectiveness of trial counsel must be denied.  Shabazz cannot make this showing in the face of the evidence presented at trial.  The incontrovertible nature of his guilt not only reflects the soundness of the advice provided by his trial counsel, but also reflects that, even if she had made any missteps, Shabazz still cannot demonstrate the requisite prejudice.  See United States v. Robinson, 301 F.3d 923, 925-26 (8th Cir. 2002) (defendant not prejudiced by trial counsel's failure to conduct an adequate pretrial investigation of a government witness; even if an investigation would have enabled impeachment of the witness, the remainder of the government's evidence easily demonstrated defendant's involvement in the conspiracy); Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir.1990) (no prejudice where trial counsel failed to interview witness to self-defense claim; no showing of reasonable likelihood that interview would have yielded useful information or led to a different result at trial where self-defense claim was weak).  Accordingly, Shabazz is not entitled to relief on any of his claims of ineffective assistance of trial counsel.

### C.      Appellate Counsel Was Not Ineffective.

Shabazz alleges that appellate counsel, Mark Greenberg, Esquire, was ineffective, but Shabazz asserts only "appellate counsel failed to adequately represent Shabazz on appeal."

Pet.'s Mot. ¶ 28(s).  This bald and unelaborated allegation is not supported by any argument or citation to authority and does not begin to state much less support a claim for ineffective assistance of counsel.  The Third Circuit's careful precedential opinion shows that there is absolutely no basis for such a claim.

**V.**   **Shabazz' *PRO SE* Motion For Leave of Court to File His Amendments to Pending 28 U.S.C. Section 2255 Should Be Denied.**

Although represented by counsel, on October 18, 2010, Shabazz filed a *pro se* motion for leave of Court to file certain amendments to his pending motion under 28 U.S.C. § 2255.  Shabazz claims that his counsel overlooked these additional claims "through either inadvertence or oversight."  Pet.'s *Pro Se* Motion for Leave to File Amendments at 1.  Shabazz' motion should be denied.

Under federal law, a criminal defendant has the right to appear *pro se* or by counsel.  See Faretta v. California, 422 U.S. 806, 807, 832 (1975).  This right is guaranteed both by the Constitution and by statute.  The federal right, however, is disjunctive; a party may either represent himself or appear through an attorney. There is no right to "hybrid" representation – simultaneously *pro se* and by counsel.  Hall v. Dorsey, 534 F.Supp. 507, 508 (E.D. Pa 1982); see also United States v. Olson, 576 F.2d 1267, 1269-70 (8th Cir. 1978); United States v. Daniels, 572 F.2d 535, 540 (5th Cir. 1978); Ennis v. LeFevre, 560 F.2d 1072, 1075 (2d Cir. 1977); United States v. Williams, 534 F.2d 119, 123 (8th Cir. 1976); United States v. Hill, 526 F.2d 1019, 1024-25 (10th Cir. 1975); Move Org. v. City of Philadelphia, 89 F.R.D. 521, 523 n.1 (E.D.Pa. 1981); United States ex rel. Snyder v. Mack, 372 F.Supp. 1077, 1078-79 (E.D.Pa. 1974); cf. Storseth v. Spellman, 654 F.2d 1349, 1352-53 (9th Cir. 1981) (once counsel is appointed, prisoner has no right to assistance from inmate writ-writer).

Thus, while a defendant may choose *pro se* representation, the government submits with respect that he may not be both represented by counsel and allowed to simultaneously file *pro se* motions.  Therefore, the government respectfully requests that Shabazz' *Pro Se* Motion for Leave of Court to File his Amendments to Pending 28 U.S.C. 2255

be denied.[11]

## VI.   A Certificate of Appealability Should Not Issue.

Upon the denial of a Section 2255 motion by the district court, an appeal to the Court of Appeals by the petitioner is not permitted unless he obtains a certificate of appealability. 28 U.S.C. § 2253.  The law permits the issuance of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The application for such a certificate should first be made to the District Court. Local Rule 22.2 provides as follows:

> At the time a final order denying a petition under 28 U.S.C. § 2255 is issued, the district judge shall make a determination as to whether a certificate of appealability should issue.  If the district judge issues a certificate, the judge shall state the specific issue or issues that satisfy the criteria of 28 U.S.C. § 2253.  If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

The Third Circuit has further instructed that "as a matter of practice . . . an unsuccessful movant in a § 2255 case should in the first instance seek a certificate of appealability from the district court."  United States v. Williams, 158 F.3d 736, 742 n.4 (3d Cir. 1998).

Accordingly, in the interests of judicial economy, the government requests that in addition to denying the instant petition this Court also find that petitioner has failed to make a substantial showing of a denial of any constitutional right.

In order to present a "substantial showing of a denial of a constitutional right," in order to justify an appeal, the mere allegation of a constitutional wrong, such as deprivation of the right to effective counsel, is insufficient; the petitioner must make a substantial showing of such an error in order to present an appeal.  Santana v. United States, 98 F.3d 752, 757 (3d Cir. 1996).

---

[11]  If the Court does not deny Shabazz' *pro se* motion, the government respectfully requests it be given the opportunity to supplement its response.

To establish the required showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Further, the claim must be constitutional in nature; there may be no certificate of appealability for an issue which presents only a statutory or sentencing guidelines question. United States v. Cepero, 224 F.3d 256, 262-68 (3d Cir. 2000) (en banc), cert. denied, 121 S. Ct. 861 (2001).

For the reasons stated above, Shabazz has not made the required showing, and therefore a certificate of appealability should be denied. The absence of merit of Shabazz' constitutional claims is plain, and not debatable.

## VII.   CONCLUSION

For the reasons stated above, the Shabazz claims are without merit and should be denied.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

_____/s/_____
KAREN S. MARSTON
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Government's Response to

Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. Section 2255,

has been served by electronic mail to counsel of record and to the defendant by U.S. Mail, postage

prepaid, as follows:

Kenneth A. Young at kyoungesq@aol.com

Bilial Shabazz
Register No. 78388-004
USP TERRE HAUTE
U.S. PENITENTIARY
P.O. BOX 33
TERRE HAUTE, IN  47808


_____/s/_____
KAREN S. MARSTON
Assistant United States Attorney


Dated:    November 4, 2010