IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | NO. 06-710-01 |
| v. | : | |
| | : | CIVIL ACTION |
| | : | NO. 10-3882 |
| BILIAL SHABAZZ | : | |
| | : | |
| | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          JUNE 17, 2011


## I.   INTRODUCTION

        Petitioner Bilial Shabazz ("Petitioner"), by counsel, filed a petition requesting that the Court vacate his sentence pursuant to 28 U.S.C. § 2255.  Petitioner bases his claim for relief on three grounds: (1) a putative discovery violation; (2) ineffective assistance of trial counsel; and (3) ineffective appellate representation.  For the reasons set forth below the Court will deny Petitioner's motion without conducting a hearing.


## II.  BACKGROUND

        On December 14, 2006, a grand jury in the Eastern District of Pennsylvania returned an indictment against Petitioner and three co-conspirators–Christopher Young, Steven Patton, and Bruce Johnson.  The indictment charged the parties

with three Counts: (1) conspiracy to commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (Count 1); (2) aiding and abetting a Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2 (Count 2); and (3) aiding and abetting the using and carrying of firearms during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1) and 2 (Count 3). Petitioner, with the representation of court-appointed counsel, Constance Mary Clarke, Esquire ("Ms. Clarke"), proceeded to trial before a jury.  The jury found Petitioner guilty as to all Counts.

Thereafter, Petitioner sought new representation, Mark Greenberg ("Mr. Greenberg"), Esquire, for sentencing and appeal. On April 16, 2008, Petitioner was sentenced to 240 months imprisonment on Counts one and two and a consecutive 120-month term of imprisonment on Count three, for a total of 360 months imprisonment.

Petitioner's effort to overturn his conviction via direct review was unavailing.  On April 16, 2009, the Third Circuit affirmed the judgement of this Court.  Thereafter, on August 2, 2010, Petitioner, with the assistance of counsel, filed the instant motion.  The Government filed its response on November 4, 2010.  The instant motion is now ripe for disposition.[1]

---

[1]    On October 18, 2010, Petitioner filed a pro se motion for leave of the Court to file amendments to his pending § 2255

## III. DISCUSSION

Petitioner's motion raises three grounds for relief. Namely, that (1) the Government failed to provide all relevant discovery; (2) trial counsel was ineffective; and (3) appellate counsel was ineffective.

As outlined below, Petitioner's first and third arguments are unavailing because they are nothing more than bald assertions unsupported by the record. Petitioner's second argument is also unavailing. Petitioner fails to demonstrate that any of the alleged errors of trial counsel establish that counsel's representation was so deficient that Petitioner was essentially denied the counsel guaranteed by the Sixth Amendment and that any alleged deficiency caused prejudice. Consequently, despite the statutory presumption in favor of holding evidentiary hearings in connection with § 2255 motions, see 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing . . . ."), Petitioner's claim will be denied without a hearing, see United States v.

_____

petition. Petitioner's pro se motion will be denied because any communication Petitioner has with the Court while represented by counsel shall be through counsel. See McKaskle v. Wiggins, 465 U.S. 168, 183 (1984) (stating that there is no constitutional right to hybrid representation); United States v. D'Amario, 328 F. App'x 763, 764 (3d Cir. 2009) ("[A] district court is not obligated to consider pro se motions by represented litigants.").

McCoy, 410 F.3d 124, 134 (3d Cir. 2005) (explaining that no hearing is required if the record clearly resolves the merits of the § 2255 motion).

A.    Putative Discovery Violation

Petitioner's first ground for relief will be construed as a discovery violation.  Petitioner alleges that the Government developed numerous photographs from disposable cameras Petitioner owned and showed these photographs to potential witnesses, but failed to produce these photographs in discovery.  (Petition at ¶ 21.)  Petitioner states that these "photographs were clearly exculpatory and should have been produced to the defense and could have been used to show that Mr. Shabazz is not guilty." (Id.)  The record, however, establishes otherwise.

Consistent with Petitioner's allegations, the Government admits it developed photographs from disposable cameras that belonged to Petitioner.  However, the Government disagrees with Petitioner's statement that these photographs were not produced during discovery.  Unlike Petitioner, the Government has provided evidence to support its position.  The record indicates that, on June 7, 2007, the Government wrote a letter to Ms. Clarke informing her that there was additional discovery material.  (Gov. Resp. at Ex. A-2.)  In particular, this letter informed Ms. Clarke that this additional discovery included

photographs from disposable cameras.  The letter also informed
counsel that if counsel wished to review the photographs, counsel
should contact the Assistant United States Attorney and schedule
a time to review said photographs.[2]  (Id.)  In response, Ms.
Clarke scheduled an appointment to review these photographs and
reviewed them with Petitioner in the room.  (Gov. Resp. at Ex. A,
¶ 5.)  After reviewing the photographs, neither Petitioner nor
his counsel believed the photographs provided exculpatory
information, and they did not find that there was a need for such
evidence at trial.  (Id.)

Based on the evidence presented, nothing, other than
Petitioner's bald assertions, suggests that the Government was
less than forthcoming and failed to provide all photographs in
its possession.  Consequently, the Court finds no basis for this
allegation and Petitioner's motion on this ground will be denied.


B.  Ineffective Assistance of Counsel

Petitioner's second ground for relief is based on Ms.
Clarke's alleged ineffective assistance.  This claim, which is
assessed under the two-pronged Strickland framework, is grounded
in the Sixth Amendment right to "'effective assistance of
counsel'—that is, representation that does not fall 'below an

---

[2]      The Government states that it provided access to the
photographs via this procedure because some of the photographs
were pornographic, and the Government was hesitant to make copies
of such material.  (Gov. Resp. at 9, n.6.)

objective standard of reasonableness' in light of 'prevailing professional norms.'" <u>Bobby v. Van Hook</u>, 130 S. Ct. 13, 16 (2009) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984)).

Petitioner alleges that counsel was ineffective for twelve reasons: (1) stipulating to the admission of wire transfer documents; (2) failing to request and demand copies of certain photographs from disposable cameras; (3) failing to investigate certain witnesses or present a defense regarding Petitioner shaving his beard before the robbery; (4) failing to call co-conspirator Christopher Young; (5) failing to file a motion to suppress or object to certain handwritten letters by Petitioner; (6) failing to adequately cross-examine co-conspirator Bruce Johnson and failing to object to his identification of individuals from still photographs; (7) failing to adequately argue the motion to suppress Petitioner's statement to law enforcement; (8) failing to object to: bullets introduced as evidence, the Government's opening statement, the introduction of certain cellphone records, Ms. Ronneka Rankin's testimony regarding an abortion, and FBI Majarowitz' lay opinion regarding the resemblance of co-conspirator Christopher Young and Philadelphia Police Department Suspect Nikia Rigney; (9) withdrawing a motion to disclose a confidential informant; (10) failing to request proffer notes of Shelly Young; (11) failing to

question certain witnesses regarding the amount of time they were incarcerated together; and (12) failing to object to co-conspirator Steve Patton's testimony regarding video surveillance

### 1.  Legal Standard

Under Strickland, Petitioner must make two showings to obtain relief for ineffective assistance of counsel.  First, Petitioner must show that his lawyer's performance was deficient by identifying counsel's "acts or omissions" that were outside the bounds of "reasonable professional judgment."  Strickland, 466 U.S. at 688, 690.  The Court must decide whether the acts or omissions "were outside the wide range of professionally competent assistance."  Id. at 690.  The Court judges counsel's performance based on the case-specific facts, viewed as of "the time of counsel's conduct."  Id.  Under this first prong, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Second, Petitioner must show "that the deficient performance prejudiced the defense," meaning that "counsel's errors were so serious as to deprive the defendant of a fair trial" with a reliable result.  Id. at 687.  Petitioner must therefore show that "there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." Id. at 669.  "Stated differently, there will be no award of relief unless the defendant affirmatively establishes the likelihood of an unreliable verdict." McAleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir. 1993).

The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong.  See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010).  As a result, if a petitioner fails on either prong, he loses.  Rolan v. Vaughn, 445 F.3d 671 (3d Cir. 2006).

> 2.  Counsel Was Not Ineffective For Stipulating To The Admission Of Wire Transfer Documents and This Stipulation Did Not Result In Prejudice

Petitioner argues that trial counsel was ineffective for stipulating to the admission of wire transfer documents because these documents were not self-authenticating.  Petitioner states that if trial counsel did not stipulate to the admission of these documents, then live witnesses would have had to provide testimony to establish their authenticity.  Petitioner states that this stipulation denied him his rights under the

Confrontation Clause of the Sixth Amendment because the documents, themselves, could not be cross-examined. (Petition at ¶ 28(a).)

The Court must decide whether the making of this stipulation was outside the bounds of "reasonable professional judgment." Strickland, 466 U.S. at 690. Petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Petitioner has not met this burden.

Petitioner's trial counsel, Ms. Clarke, provided an affidavit. (Gov. Resp. at Ex. A.) Ms. Clarke stated, and provided documentation to establish, that Petitioner "agreed to enter into the stipulations" and signed the stipulations. (Gov. Resp. at Ex. A, A-1.) Petitioner does not refute the fact that he agreed to the stipulations. Rather, Petitioner argues that the decision to enter into the stipulations was not sound trial strategy. Stipulations are often used to avoid senselessly lengthening a trial or drawing attention to issues harmful to a party. Here, the use of a stipulation as to the wire transfers was sound trial strategy because it prevented the Government from drawing unnecessary attention to the wire transfers. The Government has stated that if this stipulation was not made, the Government was prepared to call a custodian of records to

introduce the wire transfer evidence.  (Gov. Resp. at 14.)  This
would have only served to highlight the existence of this
damaging evidence.  As such, trial Counsel's recommendation to
Petitioner that he agree to this stipulation was sound trial
strategy.

Moreover, even if this decision was outside the bounds
of reasonable competent assistance, Petitioner has failed to
establish that such error prejudiced the outcome of the trial.
Entering into this limited stipulation did not prejudice the case
given the large amount of evidence against Defendant.  See
United States v. Shabazz, 564 F.3d 280, 286 (3d Cir. 2009) ("The
heart of the Government's case was the testimony of Patton,
Johnson and Tate, the footage from the surveillance video, and
the cell phone records linking Shabazz's phone to Johnson's
(including one call from the area of the Roosevelt Boulevard
Wal-Mart just prior to the robbery). That evidence overwhelmingly
pointed to Shabazz's guilt.").  Consequently, this claim of
ineffective assistance of counsel will be denied.


### 3.   Counsel Was Not Ineffective For Failing To Request Copies Of Photographs From Disposable Cameras

Petitioner next argues that trial counsel was
ineffective for failing to request copies of the photographs the
Government developed from Petitioner's cameras and showed to
witnesses in the case.  Petitioner states that some photographs

were selectively provided to his trial counsel, but that others were not and may have contained exculpatory material. (Petition at ¶ 28(b).)

The facts relevant to this issue are set forth in section III.A. of this memorandum. The facts of record indicate that Ms. Clarke acted appropriately and decided not to request copies of these photographs only after reviewing them and determining that they were not helpful to Petitioner's defense. (Gov. Resp. at Ex. A, ¶ 5.) Furthermore, Petitioner's assertion that he was prejudiced by Ms. Clarke's failure to request copies of the pictures because the photos "may have contained exculpatory material" is insufficient to establish the second prong of <u>Strickland</u> and call into question the outcome of the trial. Consequently, this claim of ineffective assistance of counsel will be denied.

4. <u>Counsel Was Not Ineffective For Failing To Investigate Certain Witnesses That Counsel Was Never Informed Existed</u>

Petitioner argues that counsel was ineffective for failing to properly investigate potential witnesses who would have provided testimony to establish that Petitioner did not have a beard from Thanksgiving of 2006 to the time of his arrest in February 2007. Petitioner argues that such testimony would establish that Petitioner could not have been the person

identified as the individual who committed the crimes charged. (Petition at ¶ 28(c).)  Related to this argument, Petitioner states that counsel failed to call several witnesses who could have testified that Petitioner shaved his beard on Thanksgiving 2006 and did not have a beard in December of 2006.  (Petitioner at ¶ 28(d).)

The Court must determine whether, taking into consideration the surrounding circumstances, such an omission was outside the bounds of reasonable professional judgment. Strickland, 466 U.S. at 690.  The Court is mindful of Strickland's guidance in regards to the interplay between an attorney's duty to investigate a matter and her strategic choices regarding that matter:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Id. at 690-691.

Ms. Clarke's affidavit indicates that she hired a

private investigator to aid in the development of Petitioner's defense. (Gov. Resp. at Ex. A, ¶ 2.) Ms. Clarke states that Petitioner was aware that a private, court-appointed investigator was hired, but Petitioner failed to provide Ms. Clarke or the investigator with the names of any potential defense witnesses. (Id.) Petitioner has not provided any evidence to rebut this statement. Applying "a heavy measure of deference to counsel's judgments," the Court finds that Ms. Clarke's investigation for potential witnesses to testify was reasonable based on the information she was provided. Trial counsel used the services of a private investigator and investigated those witnesses known to exist. Counsel was not informed of any other "potential witnesses;" it would be unreasonable to expect her to interview others unknown to her. Additionally, Petitioner's girlfriend, Janeen Bey, was called as a witness at trial and she could have testified as to whether Petitioner had a beard in December 2006. Petitioner, however, did not request that this witness testify in regards to his facial hair.

Moreover, the provision of witnesses to testify as to Petitioner's facial hair during the time of the robbery would have been harmful to Ms. Clarke's trial strategy. Ms. Clarke states that she and Petitioner "specifically discussed the issue regarding whether or not [Petitioner] had a beard and a strategic decision was made not to draw attention to any photographs."

(Gov. Resp. at Ex. A, ¶ 3.)  This was sound trial strategy given that one of the Government's main pieces of evidence was footage from a surveillance video.  Trial counsel logically decided that it would not be in Petitioner's best interest to provide testimony relating to Petitioner's facial features and attract unnecessary attention to photographs of Petitioner.  Petitioner has not overcome the strong presumption against second-guessing trial counsel's trial strategy.

Petitioner has failed to establish a claim for ineffective assistance of counsel on this basis for three reasons: (1) Petitioner has not established that Ms. Clarke had knowledge of alleged potential witnesses; (2) Petitioner has not established that the absence of these witnesses prejudiced the case given other witnesses, such as his girlfriend, could have testified in regards to the same information; and (3) Petitioner has not established that trial counsel's trial strategy was outside the bounds of reasonable judgment.  Consequently, this claim of ineffective assistance of counsel will be denied.

### 5. Counsel Was Not Ineffective For Failing To Call Co-Conspirator Christopher Young

Petitioner argues that counsel was ineffective for failing to call co-conspirator Christopher Young to testify. Petitioner states that this prejudiced him because Mr. Young would have testified that Petitioner was not involved in the

crimes at bar.  (Petition at ¶ 28(e).)  The Government argues,

however, that counsel's decision not to call Mr. Young was a

reasoned, strategic decision made after considering Mr. Young's

prior statements while acting as a cooperating witness.  (Gov.

Resp. at 17-18.)  To determine if this decision renders trial

counsel ineffective the Court must determine whether, under the

circumstances, the decision not to call Petitioner's co-

conspirator was outside the wide range of professionally

competent judgment.

Additionally, the Court is mindful that "[t]here is

general agreement in the case law and the rules of professional

responsibility that the authority to make decisions regarding the

conduct of the defense in a criminal case is split between

criminal defendants and their attorneys."  Gov't of V.I. v.

Weatherwax,  77 F.3d 1425, 1433 (3d Cir. 1996).  The accused has

the ultimate authority to make certain fundamental decisions,

i.e., whether to plead guilty or have a trial by jury.  On the

other hand, non-fundamental decisions are to be made by counsel

on the basis of his or her professional judgment exercised after

consultation with the client.  Id. (citing Jones v. Barnes, 463

U.S. 745 (1983) (recognizing accused has right to make certain

fundamental decisions)); id. (recognizing as non-fundamental

decisions whether and how to conduct cross-examinations, what

jurors to accept or strike, what trial motions should be made,

and witness selection).

Here, co-conspirator, Mr. Young, initially cooperated with the Government and accepted a plea agreement. During his cooperation, Mr. Young provided damaging information about Petitioner's role in the conspiracy. (Gov. Resp. at Ex. A, ¶ 6.) During trial, this information was corroborated by another cooperating witness. Ms. Clarke states that she took all this into account when deciding whether to call Mr. Young to testify on Petitioner's behalf. (Id.) The decision not to call Mr. Young was a strategic decision. Ms. Clarke realized that, even if Mr. Young testified in Petitioner's favor, he would lack credibility because the Government would have the opportunity to impeach Mr. Young with his prior inconsistent statements. Moreover, Ms. Clarke believed that introduction of the prior inconsistent statements would cause a substantial amount of harm to Petitioner's case because these statements would have been corroborated and bolstered by the Government's cooperating witness. As a result of not calling Mr. Young, these prior inconsistent statements were not heard by the jury.

Ms. Clarke's judgment is entitled to a wide latitude of discretion. The decision as to whether to call Mr. Young is a non-fundamental decision that was up to the sound discretion of counsel. Ms. Clarke was well aware of Mr. Young's extremely limited potential value and certain great harm as a witness.

With this in mind, the Court finds that Ms. Clarke used reasonable judgment when deciding whether to call Mr. Young to testify.  As such, the Court finds that Ms. Clarke exercised sound trial strategy and this claim of ineffective assistance of counsel will be denied.

6.  <u>Counsel Was Not Ineffective For Failing To File a Motion To Suppress Or Object To Certain Handwritten Letters Written By Petitioner</u>

Petitioner argues that counsel was ineffective for failing to file or argue a motion to suppress or object to letters that were allegedly written by Petitioner to government witness Ronneka Rankin.  (Petition at ¶ 28(f).)  The record indicates that, on August 3, 2007, the Government filed various motions <u>in limine</u> requesting that certain evidence, including Petitioner's letters to Ms. Rankin, be deemed admissible pursuant to Federal Rule of Evidence 404(b).  (<u>See</u> doc. no. 98.)  On August 8, 2007, Ms. Clarke filed a response in opposition.  (<u>See</u> doc. no. 101.)

Prior to trial, the Court heard argument on all motions <u>in limine</u>, including the motion relating to the letters at issue. At the hearing, the Court consistently ruled that the evidence, which the Government characterized as 404(b) evidence, was actually evidence of consciousness of guilt or <u>res gestae</u> which is admissible.  (Gov. Resp. at Ex. C.)  Once the Court reached

the issue of the letters, Ms. Clarke stated that she had no argument as to their admission. (Id. at 27:9-18.) The suppression transcript indicates that the Court consistently ruled that the evidence referenced in the motions in limine was res gestae evidence. Consequently, it was reasonable for Ms. Clarke to presume that the evidence of the letters would be adjudged the same inasmuch as the Government lodged the same argument relating to the letters as the other evidence the Court admitted. (See doc. no. 98 at 11-12.) As such, trial counsel's decision not to further pursue this motion was not unreasonable.

Moreover, Petitioner has not provided any explanation as to the prejudice caused by the admission of such letters. The Government presented a strong case against Petitioner that included testimony of his co-conspirators Patton and Johnson, testimony of a victim, footage from a surveillance video, and cell phone records linking Petitioner's phone to his co-conspirator's phone. Petitioner has failed to make any showing that admission of his handwritten letters to Ms. Rankin creates a reasonable probability that, but for counsel's alleged unprofessional error, the result of the proceeding would have been different. Consequently, this claim of ineffective assistance of counsel will be denied.

7.   Counsel Was Not Ineffective For Failing To Adequately Cross-Examine Co-Conspirator Bruce

<u>Johnson Or For Failing To Object To His
Identification Of Individuals From Still
Photographs</u>

Petitioner argues that counsel failed to adequately
cross-examine co-conspirator Bruce Johnson overruling
Petitioner's request to do so.  Petitioner states that such
cross-examination would have established that Mr. Johnson has a
lengthy and violent criminal record and, in the past, cooperated
with the Government and "surely knew his testimony would reduce
his potential imprisonment."  (Petition at ¶ 28(g).)  Petitioner
also states that counsel failed to request copies of Mr.
Johnson's prior cooperation agreement with the Government.  (<u>Id.</u>)
Additionally, Petitioner argues that counsel failed to object to
Mr. Johnson's narration of still photographs that were part of a
video shown to the jury.  (<u>Id.</u> at ¶ 28(n).)  Petitioner states
that Mr. Johnson was not present at the time the photographs were
taken therefore this was "improper lay testimony."  (<u>Id.</u>)

A review of the record indicates that Petitioner's
claim is baseless.  First, during direct examination, Mr.
Johnson's past was thoroughly discussed.  For example, during
direct, Mr. Johnson explained his prior felony conviction (App.
119), the fact that he fled to Yemen (App. 120), that he
previously agreed to cooperate with the Government (App. 120),
his prior arrest and time on supervised release (App. 121-22),
and details relating to his plea agreement in this case (App.

123-25).  Moreover, during direct, Ms. Clarke properly raised
objections.  For example, Ms. Clarke objected to Mr. Johnson's
identification of Petitioner while the Government showed footage
from the surveillance video and this objection was sustained.
(App. 171-72.)

Thereafter, Ms. Clarke thoroughly cross-examined Mr.
Johnson as to his plea agreement in this case and the benefits
that may flow from the agreement.  In fact, Ms. Clarke asked Mr.
Johnson if "in exchange for this testimony that you're giving
here today, you are expecting to get some kind of benefit."
(App. 216:6-8.)  Additionally, Ms. Clarke asked Mr. Johnson if he
knew the significance of receiving a downward departure or 5K
motion.  (App. 216:17-25, 217:1-4.)  Ms. Clarke also questioned
Mr. Johnson about his prior federal firearms conviction.  (App.
217.)  Finally, Ms. Clarke questioned Mr. Johnson about his
previous cooperation with the Government, and his disappearance
to Yemen.  (App. 217-18.)  Consequently, the record establishes
that Petitioner's concerns regarding Ms. Clarke's cross-
examination of Mr. Johnson are baseless.

Moreover, Petitioner cannot establish that any of the
acts or omissions he asserts were not part of a reasonable trial
strategy.  As stated above, trial counsel has the authority to
make non-fundamental decisions on the basis of his or her
professional judgment.  Weatherwax,  77 F.3d at 1433 (recognizing

as non-fundamental decisions whether and how to conduct cross-examinations, what jurors to accept or strike, what trial motions should be made, and witness selection). Claims that counsel failed to adequately cross-examine a witness are analyzed to see whether the alleged deficiency was part of a reasonable trial strategy. See United States v. Berryman, 100 F.3d 1089, 1098-99 (3d Cir. 1996) (affirming lower court's decision that counsel did not employ sound trial strategy in failing to cross-examine the victim as to her prior inconsistent statements because the prior inconsistent statement went to the heart of the only evidence against the Defendant). Here, the record shows that counsel properly cross-examined Mr. Johnson. Ms. Clarke inquired into all relevant areas of Mr. Johnson's past without becoming redundant and losing the attention of the jury. Moreover, Ms. Clarke objected throughout direct of Mr. Johnson when appropriate.

Even if Petitioner could establish that Ms. Clarke's cross-examination was deficient, Petitioner cannot show that such deficiency prejudiced the outcome of the trial. The Government's case was not based solely on the testimony of Mr. Johnson. The Government had a strong case that was also based on the testimony of co-conspirator Patton, a victim, video surveillance footage, and cell phone records. See Derrickson v. Meyers, 177 F. App'x 247, 250-51 (3d. Cir. 2006) (affirming lower court's

determination that Petitioner was not prejudiced by counsel's cross-examination because there was other substantial evidence justifying conviction). As such, Petitioner has not shown that Ms. Clarke's deficiencies, if any, during cross-examination of Mr. Johnson, create a reasonable probability that, but for the deficiencies, the result of the proceeding would have been different. Consequently, this claim of ineffective assistance of counsel will be denied.

8.    Counsel Effectively Argued The Motion To Suppress Petitioner's Statements Made To Task Force Officers

Petitioner argues that counsel failed to adequately argue the motion to suppress Petitioner's statements made to task force officers after his arrest in Florida. Additionally, Petitioner argues that counsel failed to subpoena vital witnesses in regards to this motion to suppress. (Petition at ¶ 28(h).) Petitioner was arrested in Miami, and Detective Wayne McCarthy transported Petitioner to the Miami-Dade County jail for processing. (App. 265.) While Petitioner was surrendering his personal property, which included approximately $2,500 in cash, Detective McCarthy remarked that Petitioner carried a lot of cash. (App. 267.) In response, Petitioner said "there's a lot more where that came from." (App. 267.) Detective McCarthy testified that Detective Ronald Stewart was the only other

detective to hear this statement.  (App. 262.)

On August 13, 2007, the Court heard argument on the motion to suppress Petitioner's statement to Detective McCarthy. (App. 259-74.)  At this hearing, Detective McCarthy was thoroughly cross-examined.  (Id.)  Ms. Clarke questioned Detective McCarthy as to this statement.  Detective McCarthy stated that the statement was made in casual conversation.  In an attempt to impeach Detective McCarthy, Ms. Clarke directed Detective McCarthy's attention to a document Detective McCarthy drafted after his exchange with Petitioner.  This document stated that Detective McCarthy overheard Petitioner say "there's a lot more where that came from."  Detective McCarthy, however, explained that this document was incorrect and that he did not overhear this statement but, in fact, it was said directly to him.  (App. 269-70.)  Based on a reading of the transcript, Ms. Clarke properly cross-examined Detective McCarthy and Petitioner's claim is baseless.

As to Detective Stewart, Ms. Clarke's affidavit states that although he was available to testify, she made the strategic decision not to call him.  Ms. Clarke avers that she did not think it was necessary to call another Government witness who would further collaborate the Government's evidence of the statement.  (Gov. Resp. at Ex. A, ¶ 10.)  Ms. Clarke concluded that the prejudicial value outweighed any benefit that would

arise out of Mr. Stewart's testimony. Ms. Clarke has presented the Court with a reasonable trial strategy, and Petitioner has not pointed to any evidence to the contrary which would overcome the presumption that such strategy was sound. Consequently, Ms. Clarke's failure to call Detective Stewart during the motion to suppress does not render her representation ineffective.

Even assuming trial counsel erred in arguing the motion to suppress, Petitioner cannot establish that he is entitled to relief because he has not pointed to any prejudice that resulted from such alleged deficiencies. Significantly, on direct appeal, Petitioner argued that he was entitled to relief because this statement should have been suppressed. Petitioner stated that the statement was the product of custodial interrogation and inadmissable. The Court of Appeals for the Third Circuit, however, held that even if the District Court erred in admitting this evidence, the admission of the evidence was merely harmless error. Shabazz, 564 F.3d at 286. As such, Petitioner cannot establish that failure to properly argue the motion to suppress and admission of this evidence creates a reasonable probability that, but for counsel's failure to properly argue the suppression motion, the result would have been different. Consequently, this claim of ineffective assistance of counsel will be denied.

9.  Counsel Was Not Ineffective For Failing To Object
    To Certain Evidence And Statements Made During
    Trial

Petitioner contends that counsel was ineffective for
failing to object to certain evidence and statements on five
different occasions.  Petitioner states that counsel failed to
(1) object to the admission of bullets seized from co-conspirator
Young's hotel room (Petition at ¶ 28(i)); (2) object during the
Government's opening statement when the Prosecutor stated that
co-conspirator Johnson knew "just the man for the job" and "knew
who exactly to get involved" (id. at ¶ 28(o)); (3) object to the
introduction of Cingular telephone records (id. at ¶ 28(p)); (4)
object to the Government's questioning of Ms. Rankin's abortion
(id. at ¶ 28(q)); and (5) object to Detective Majorowitz' opinion
as to the resemblance between Mr. Young and Mr. Rigney (id. at
¶28(r)).

The Court must determine whether, in any of these
instances, trial counsel's failure to object falls below an
objective standard of reasonableness.  The Court is mindful that,
as previously stated, there is a strong presumption that
counsel's performance falls within the wide range of
professionally competent assistance.  Strickland, 466 U.S. at
690.  Additionally, the Court is aware that the decision to
object is a non-fundamental decision left to the discretion of
counsel.  The decision to object or not object will be assessed

as to whether the decision comports with trial counsel's sound trial strategy.  When the record does not disclose trial counsel's actual strategy, the court must determine "whether any sound strategy could have supported [the Petitioner]'s counsel's actions."  Luparella v. United States, 335 F. App'x 212, 216 (3d Cir. 2009) (citing Thomas v. Varner, 428 F.3d 491 (3d Cir. 2005)).  Additionally, the Court must determine whether any of these instances of alleged error prejudiced the outcome of the trial.

As to the bullets seized from co-conspirator Young's hotel room, Ms. Clarke could have reasonably concluded that objecting to such evidence would only serve to undermine Petitioner's defense.  The bullets were found in the sole possession of Mr. Young and were unconnected to Petitioner. Therefore, it was reasonable for Ms. Clarke to believe no objection needed to be made since the bullets were not evidence against Petitioner.  Moreover, this evidence was used to Petitioner's advantage because Ms. Clarke was able to emphasize that the bullets were seized from Mr. Young and that no evidence of bullets or other weapons were seized from Petitioner.  This strategy does not fall below an objective standard of reasonableness.

Next, the Court examines whether Ms. Clarke was ineffective for failing to object to the Government stating, in

its opening statement, that co-conspirator Johnson knew "just the man for the job" and "knew who exactly to get involved." This argument is baseless given that Ms. Clarke objected to the Government making such statements prior to the beginning of opening statements. (Gov. Resp. at Ex. C, 32-33.) Prior to opening statements, the Court ruled that these statements were permissible. As such, during opening statements, Ms. Clarke was aware that Government counsel was going to only state what the Court had approved. Because the matter had already been addressed, objecting again was unnecessary. Additionally, Petitioner's claim that Ms. Clarke was ineffective for failing to object to the introduction of the Cingular cellphone records is without merit. Prior to trial, Ms. Clarke, with the consent of Petitioner, stipulated to admission of these records. (Gov. Resp. at Ex. A-1.) As such, any objection to these records would have also been frivolous.

As to counsel's failure to object to the testimony of Ms. Rankin in regards to an abortion, the Court finds that the decision to allow this testimony was part of a reasonable trial strategy. Ms. Clarke avers that, prior to trial, she discussed this issue with Petitioner and they decided that it would be in Petitioner's best interest to allow this testimony. (Gov. Resp. at Ex. A, ¶ 9.) Ms. Clarke wanted this testimony to be heard because she wanted to establish that Ms. Rankin lied to

Petitioner, thereby discrediting Ms. Rankin's testimony.

Finally, Ms. Clarke's decision not to object to
Detective Majorowitz' lay opinion testimony regarding the
resemblance between Mr. Young and Mr. Rigney was not unreasonable
based on Federal Rule of Evidence 701. In relevant part, the
rule provides:

> [T]he witness' testimony in the form of
> opinions or inferences is limited to those
> opinions or inferences which are (a)
> rationally based on the perception of the
> witness, (b) helpful to a clear understanding
> of the witness' testimony or the
> determination of a fact in issue, and (c) not
> based on scientific, technical, or other
> specialized knowledge within the scope of
> Rule 702.

Fed. R. Evid. 701. "In the identification context at least, Rule
701 is typically applied where a witness is asked to identify the
defendant in an incriminating photo or video based simply on
general familiarity with the defendant's appearance." Shabazz,
564 F.3d at 287. Here, Ms. Clarke was aware of the applicability
of Rule 701, and understood that any objection would be frivolous
because Detective Majorowitz' testimony was offered while
perceiving the photographs.

Moreover, even if Petitioner could establish that any
of these "omissions" establish that counsel was deficient,
Petitioner cannot, and has not, shown that prejudice to the
outcome of the trial flows from admission of this evidence. The

bullets, the comments made in the Government's opening statement, Ms. Rankin's testimony, and Detective Majorowitz' opinion all played a minor role in the case.  As found by the Third Circuit, "[t]he heart of the Government's case was the testimony of Patton, Johnson and Tate, the footage from the surveillance video, and the cell phone records linking Shabazz's phone to Johnson's."  Shabazz, 564 F.3d at 286.  As to the Cingular phone records, Petitioner has not established that any prejudice flows from their admission.  Petitioner merely states that this should not have been admitted because "it was used only to refresh the witnesses recollection and improperly admitted and furthermore, the documents were not self authenticating."  (Petition at ¶ 25(p).)  This is insufficient to establish that but for the admission of these records the outcome would be different.  Additionally, given that the Government's case was rooted in various pieces of substantial evidence, any harm from this evidence is outweighed by the various other pieces of evidence, including video footage of the robbery and testimony of co-conspirators.  Consequently, this claim of ineffective assistance of counsel will be denied.

> 10.  Counsel Was Not Ineffective For Withdrawing The Motion To Disclose A Confidential Informant After The Court Heard Argument

Defendant argues that counsel was ineffective because

counsel improperly withdrew the motion to reveal the identity of a confidential informant. Petitioner states that "this information is mandatory discovery not subject to any privacy issues of the government." (Petition at ¶ 28(j).) Petitioner states that this prejudiced him because this information "could have been exculpatory." (Id.)

Petitioner's statement that the identity of a confidential informant is mandatory discovery is a misstatement of the law. While there is no fixed rule as to when disclosure is required, the Supreme Court has stated that "once a defendant sets forth a specific need for disclosure the court should balance 'the public interest in protecting the flow of information against the individual's right to prepare his defense.'" United State v. Jiles, 658 F.2d 194, 196 (3d Cir. 1981) (quoting Roviaro v. United States, 353 U.S. 53, 62 (1957)). As such, the Government's privilege to withhold disclosure of the identity of a confidential informant is not without limitations. "'Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.'" Id. (quoting Roviaro, 353 U.S. at 60-61). To determine whether the identity of an informant must be disclosed, the court must first "ascertain what need, if any, the defendant has alleged for disclosure." Id. at

197.

On August 13, 2007, Ms. Clarke argued the motion for disclosure of the confidential informant. Ms. Clarke stated that a document, turned over by the Government, indicated that one of the Government's agents showed a confidential informant a videotape of the robbery and the confidential informant identified Petitioner as the person in the video. (Gov. Resp. at Ex. C, 11:13-19.) Throughout argument of the motion, it became clear that any information provided by this confidential informant would not be discussed at trial. (Id. at 15:10-18.) The Government represented that the confidential informant was used to locate co-conspirator Christopher Young and any information provided by the informant was irrelevant to Petitioner's case. After realizing that the informant's communication, in regards to Petitioner, was irrelevant because it would not be used at trial to establish Petitioner's guilt, Ms. Clarke recognized that the motion was baseless and agreed to withdraw the motion. The Court finds that this decision was within the bounds of reasonable judgment. Consequently, this claim of ineffective assistance of counsel will be denied.

11.  Counsel Was Not Ineffective For Failing To Request
      The Proffer Notes Of Shelly Young

Petitioner argues that counsel was ineffective for failing to request documentation of proffer notes of Government

witness Shelly Young, co-conspirator Bruce Johnson's wife. Petitioner states that this was prejudicial because these notes would have shown that Ms. Young was "a potential exculpatory witness." (Petition at ¶ 28(k).) Additionally, Petitioner states that Ms. Young was willing to testify and impeach the credibility of co-conspirator Johnson. (Id.)

Petitioner's argument is baseless. In Petitioner's consolidated pretrial motions, Ms. Clarke moved for government agents to retain, preserve, and produce their handwritten notes made during or after interrogation of all Government witnesses. (See doc. no. 73.) This motion was made so that the notes would be preserved and the Court could determine whether any of these notes were Brady or Jencks material. (Id.) This motion was addressed by the Court, and the Court stated that it understood "the rough notes . . . [had] been preserved, and the typewritten notes [had] been turned over." (Gov. Resp. at Ex. C, 16:21-24.) Additionally, the Court found that "the rough notes, to the extent that they contain[ed] either Brady material or may be deemed to be Jen[c]ks material has been turned over." (Id. at Ex. C, 17:2-5.) Counsel represented that these assertions were correct and the motion was denied as moot.

The record establishes that Petitioner's argument is baseless and counsel handled this motion appropriately. Even if there was any type of error attributable to this issue,

Petitioner has not put forth any evidence to establish actual prejudice.  The only possible prejudice Petitioner asserts is that these notes "would have shown [Young] was a <u>potential</u> exculpatory witness."  (Petition at ¶ 28(k) (emphasis added).)  This equivocal statement, without more, is far from enough to meet the high bar set by the prejudice prong of the <u>Strickland</u> test.  Consequently, this claim of ineffective assistance of counsel will be denied.

> 12.  <u>Counsel Was Not Ineffective For Failing To Question Certain Witnesses Regarding The Amount Of Time They Were Incarcerated Together</u>

Petitioner states that counsel was ineffective for failing to question witnesses about the time they spent together "while incarcerated and plotting to frame Mr. Shabazz," and for failing to subpoena prison records.  (Petition at ¶ 28(l).)  This argument is baseless.

Ms. Clarke stated in her affidavit that, during trial, Petitioner told her "that he had overheard Steve Patton and Bruce Johnson talking about testifying while in lock up."  (Gov. Resp. at A, ¶ 8.)  The record indicates that, in response, Ms. Clarke questioned co-conspirator Patton in regards to the time he spent incarcerated with co-conspirator Johnson.  (App. 108-12.)  Mr. Patton admitted that he was in custody for a period of time with Mr. Johnson.  Thus, there was no need for Ms. Clarke to subpoena

the jail records. When questioned as to whether Mr. Patton discussed the case with Mr. Johnson, Mr. Patton repeatedly said he did not. (App. 111-12.) Based on this testimony, it was reasonable for Ms. Clarke not to question Mr. Johnson on the same issue so she could preserve the uncontradicted testimony that the prisoners had been housed together with a corresponding opportunity to confer.

The only way for Ms. Clarke to have effectively rebutted Mr. Patton's testimony would have been by calling Petitioner as a witness. However, Petitioner himself had chosen to assert his Fifth Amendment right, and was therefore unavailable to Ms. Clarke as a witness. (Gov. Resp. at Ex. A, ¶ 8.) In all decisions pertaining to this issue, Ms. Clarke employed sound trial strategy within the bounds of reasonable professional judgment. This claim of ineffective assistance of counsel will be denied.

### 13. Counsel Was Not Ineffective For Failing To Object To Co-Conspirator Steve Patton's Narration Of The Video Played To The Jury

Petitioner argues that Counsel was ineffective for failing to object to co-conspirator Steve Patton's narration of surveillance video footage of the robbery and identification of Petitioner in the video. (Petition at ¶ 28(m).) On direct appeal, Petitioner made a similar argument. Petitioner argued

that the Court erred in allowing such narration.  <u>Shabazz</u>, 564
F.3d at 286-87.  Here, Petitioner's claim is slightly different
than that brought on direct appeal because Petitioner now claims
that any error is attributable to his counsel as opposed to the
District Court.

        To succeed on this claim, Petitioner must establish
that any omissions made by counsel were outside the bounds of
reasonable judgment.  Petitioner's claim, however, is baseless
because the record indicates that counsel appropriately objected
to this line of questioning.  For example, when this narration
began, Ms. Clarke objected to the questioning by stating that it
should not be allowed "unless [Patton] has firsthand knowledge,"
and the Court sustained this objection.  (App. 79.)
Additionally, throughout Steve Patton's entire narration and
identification of Petitioner, Ms. Clarke objected numerous times.
(<u>Id.</u> at 80, 82, 83, 85, 86.)

        The decision rendered on direct review reaffirms the
reasonableness of Ms. Clarke's objections.  On direct review, the
Third Circuit held that admission of such evidence was
permissible because "Patton testified as a fact witness, not as a
witness providing opinions and inferences of the type that
potentially encroach on the province of the jury."  <u>Shabazz</u>, 564
F.3d at 287.  The Third Circuit indicated that "Rule 701 is
typically applied where a witness is asked to identify the

defendant in an incriminating photo or video based simply on general familiarity with the defendant's appearance." Id. That, however, was not the case here because Patton identified Petitioner in images from a surveillance video of an event in which Patton participated. Id. The Third Circuit's reasoning indicates that the objections made by counsel were reasonable under the circumstances. Counsel objected and specifically pointed out the fact that Patton should not be permitted to testify to anything to which he did not have personal knowledge and could not state as a matter of fact. As such, Ms. Clarke exercised reasonable professional judgment.

Even if Petitioner's claims of unprofessional conduct were arguable, which they are not, Petitioner cannot establish the severe prejudice required by the second prong of Strickland. As stated previously, the evidence establishing Petitioner's guilt is overwhelming. See Shabazz, 564 F.3d at 286 ("The heart of the Government's case was the testimony of Patton, Johnson and Tate, the footage from the surveillance video, and the cell phone records linking Shabazz's phone to Johnson's."). As such any ineffectiveness alleged by this claim does not warrant collateral relief. This claim of ineffective assistance of counsel will be denied.

C.    <u>Ineffective Appellate Counsel</u>

In Petitioner's counseled petition, Petitioner merely states that appellate counsel, Mr. Greenberg, was ineffective because he "failed to adequately represent Mr. Shabazz on appeal." (Petition at ¶ 28(s).) This assertion is not supported by any facts, argument, or citations to authority. This allegation fails to provide a cognizable claim for ineffective assistance of counsel. Consequently, this claim of ineffective assistance of counsel will be denied.

## IV.  CONCLUSION

Based on the aforementioned, Petitioner's request for relief pursuant to 28 U.S.C. § 2255 will be denied.[3] An appropriate Order will follow.

---

[3]    Petitioner has not made a request for a certificate of appealability; however, even if a request had been made, it would be denied because Petitioner has not made a substantial showing of a denial of any constitutional right. <u>Santana v. United States</u>, 98 F.3d 752, 757 (3d Cir. 1996).