IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 06-710-1 |
| BILIAL SHABAZZ | |

## MEMORANDUM OPINION

Bilial Shabazz moves for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), in consideration of his chronic kidney disease ("CKD") and hypertension, as well as the length of his sentence. For the reasons that follow, his Motion will be denied.

### I. FACTUAL BACKGROUND

Before Shabazz's federal conviction in the above captioned matter, he was convicted of several state felonies. As relevant here, in 1990, he was convicted of aggravated assault, 18 Pa. Cons. Stat. § 2702 (for shooting someone). Two years later, he was convicted again for aggravated assault (this time for an altercation with correctional officers). And five years after that, he was convicted for robbery, 18 Pa. Cons. Stat § 3701 (for robbing a grocery store at gunpoint).

After serving his time for his state court convictions, Shabazz was released to a residential facility which he left without authorization. He then was involved with orchestrating another robbery with multiple co-conspirators for which the Government charged him with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); and using or carrying a firearm during or in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1) and (c)(2). Following a jury trial, Shabazz was convicted of all three counts.

1

During sentencing, and in accordance with the presentencing report, the Court treated Shabazz's state convictions for robbery and aggravated assault as crimes of violence. At the time, "crimes of violence" consisted of:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (2) is burglary of a dwelling, arson, or extortion, involves explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2 (2007).

Because his state court convictions were considered crimes of violence, and because Shabazz was older than eighteen at the time he was sentenced, the sentencing judge treated him as a "career offender" under the Sentencing Guidelines. *See id.* § 4B1.1(a) (2007). In part due to that determination, the Court calculated the Sentencing Guideline range as being 360 months to life imprisonment, then sentenced him to the lowest end of the guideline—360 months' imprisonment which term is up in 2033.

## II. LEGAL BACKGROUND

The compassionate release statute permits a court to modify an imposed term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable," only "if it finds that [] extraordinary and compelling reasons warrant such a reduction," and if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S. § 5382(c)(1)(A)(i). So "a motion for compassionate release raises three questions: (1) whether there are 'extraordinary and compelling reasons' for modifying an imposed term of imprisonment; (2) whether a new sentence would be consistent

with the factors set forth in 18 U.S.C. § 3553(a); and, (3) whether a new sentence would be consistent with any applicable policy statements." *United States v. Carter*, 711 F. Supp.3d 428, 434-35 (E.D. Pa. 2024) (citing *United States v. Pawlowksi*, 967 F.3d 327, 329 (3d Cir. 2020)), *summarily affirmed*, No. 24-2115 (3d Cir. Dec. 2, 2024).

Congress delegated to the Sentencing Commission the power to promulgate "general policy statements regarding the sentencing modification provisions in" 18 U.S.C. § 3582(c)(1)(A), which "shall describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). The Commission's policy statements, absent unusual circumstances, binding courts. *Cf. United States v. Rutherford*, 120 F.4th 360, 375 (3d Cir. 2024) (citing *United States v. Berberena*, 694 F.3d 514, 522 (3d Cir. 2012)).

### III. DISCUSSION

Shabazz argues that three of those policy statements—Sections 1B1.13(b)(1), 1B1.13(b)(6), and 1B1.13(b)(5)—each warrant a reduction in his sentence. Each are addressed *seriatim* below.[1]

#### A. Section 1B1.13(b)(1): Inadequate Medical Care and COVID-19

Section 1B1.13(b)(1)(C) of the Sentencing Guidelines provides that extraordinary and compelling reasons exist when "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). Section 1B1.13(b)(1)(D) additionally provides that extraordinary and compelling reasons exist when:

---

[1] Before bringing a motion for compassionate release, a defendant must first exhaust administrative remedies. *See* 18 U.S.C § 3582(c)(1)(A). Here, the Government concedes that Shabazz has satisfied that requirement.

3

> (D) The defendant presents the following circumstances—
>
> > (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
> >
> > (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
> >
> > (iii) such risk cannot be adequately mitigated in a timely manner.

*Id.* § 1B1.13(b)(1)(D).

Shabazz argues that his CKD and hypertension alone and in combination with the risk that he may contract COVID-19, justify compassionate release under Section 1B1.13(b)(1)(C) and Section 1B1.13(b)(1)(D).

As for his CKD and hypertension, Shabazz's medical records reveal that his conditions are being closely monitored. Those records show that in mid-2023, his glomerular filtration rate ("eGFR"), which measures how well his kidneys are working, has—at times—sat just below the normal range. But his records also reveal that, most recently, his eGFR has been well within the range that is considered appropriate. His blood pressure was checked at least 13 different times in the nine months from October 25, 2023, to July 29, 2024.

His medical records also reveal that, at times, delays in care have been due to his own refusal of treatment or testing. Near the end of 2023, additional blood work was ordered to monitor his CKD and hypertension. Because he was fasting for Ramadan, Shabazz refused to have any blood drawn in March of 2024, but later requested that the bloodwork be performed. It appears such bloodwork was performed the following month. In June and July of 2024, Shabazz

began to present with chest pain. After a sick visit, an order was placed for an ultrasound of his kidney to monitor the hypertension. At a subsequent ER visit for the same chest pain, his blood pressure was measured four times, and each measurement revealed uncontrolled hypertension. Shabazz was discharged the same day with a plan to change his medication and to conduct the ordered ultrasound. Although an earlier ultrasound had shown some renal scarring and a cyst, Shabazz's medical records reveal that he refused this most recent renal ultrasound.

Regarding COVID-19, Shabazz's medical records reveal that he has received an updated COVID-19 vaccine. Further, there are currently no cases of COVID-19 at FCI Gilmer, the facility at which he is incarcerated. Federal Bureau of Prisons, *Inmate COVID-10 Data*, Federal Bureau of Prisons (Jan. 29, 2025, 12:15 PM), https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp.

Shabazz's medical conditions, even considering COVID-19, are not extraordinary and compelling reasons that warrant release. Well-controlled hypertension rarely merits such relief. *See United States v. Teman*, 2024 WL 262781, at *6 (S.D.N.Y. Jan. 24, 2024) ("In the end, however, the decisive question is not whether [the defendant] would fare better and receive better care if living at home. It is how [the defendant's] medical conditions measure against the demanding standards set by the Sentencing Commission for when such condition(s) are *extraordinary and compelling* so as to qualify for compassionate release.") (emphasis in original); *United States v. Gomez-Moreira*, 2024 WL 245640, at *3 (E.D. Cal. Jan. 23, 2024) ("Diagnoses for chronic conditions, which are treatable by the BOP, such as diabetes, hyperlipidemia, and hypertension, do not establish extraordinary and compelling reasons that merit compassionate release.").

And although the Center for Disease Control ("CDC") recognizes that CKD can increase

the risk that an individual gets "very sick" from COVID-19, and that hypertension may "possibly" do the same, CDC, *People with Certain Medical Conditions* (May 11, 2023), https://www.cdc.gov/covid/risk-factors/?CDC_AAref_Val=https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-Conditions.html, "District Courts in the Third Circuit consistently agree that an FDA-approved vaccination against COVID-19 lessens the risk of serious illness or death from COVID-19 such that the threat of the pandemic, even combined with pre-existing medical conditions, does not constitute an extraordinary and compelling reason for compassionate release." *United States v. Hannigan*, 2022 WL 815449, at *15 (E.D. Pa. Mar. 17, 2022) (collecting cases) ("Even in the era of the highly transmissible omicron variant, Moderna vaccination and booster shot is highly effective against severe illness."); *see also United States v. Gatson*, 2022 WL 7857288, at *1 (3d Cir. Oct. 14, 2022) (finding that being "fully vaccinated[,]" without determining that the defendant received a COVID-19 booster vaccination, "reduces his risk of serious illness" and affirming the District Court's denial of compassionate release); *United States v. Thomas*, 2022 WL 296594, at *1, 2 (3d Cir. Feb. 1, 2022) (affirming the District Court's denial of compassionate release for a defendant with "high blood pressure" where "vaccination reduced the [defendant's] health risks[.]"); *United States v. Folk*, 2022 WL 58540, at *2 (3d Cir. Jan. 6, 2022), *cert. denied*, 142 S. Ct. 2848 (2022) (finding that the District Court did not abuse its discretion in denying compassionate release for a defendant with hypertension).

For the reasons set forth above, Shabazz has not demonstrated that his medical conditions—with or without the threat of contracting COVID-19—constitute extraordinary and compelling reasons for his release.

### B. Shabazz's Sentence Length

Shabazz also argues that the length of his sentence in light of current sentencing law warrants his release. For this, he relies on Section 1B.13(b)(6) of the Sentencing Guidelines, which states:

> UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

The "change in law" that Shabazz relies on is *United States v. Amos*, 88 F.4th 446 (3d Cir. 2023), which, in his view, establishes that his two state court convictions for aggravated assault cannot serve as predicate "crimes of violence," a conclusion which ultimately led to an increase in his federal sentencing range. He makes the same argument regarding an unpublished district court opinion, *United States v. Ruffin*, 2022 WL 1485283, at *4-10 (W.D. Pa. May 11, 2022) and his state court robbery conviction.

But the vehicle for an argument that state court convictions cannot be treated as predicate crimes for a sentencing enhancement is 28 U.S.C. § 2255, not a motion for compassionate release. *United States v. Lebron*, 598 F. App'x 817, 818 (3d Cir. 2015); *see also United States v. Henderson*, 858 F. App'x 466, 469 n.2 (3d Cir. 2021) (*per curiam*) (holding that defendant's challenge to his classification as a career offender under the First Step Act could not qualify as an "extraordinary and compelling reason" for compassionate release); *see also United States v. Holmes*, 2022 WL 3657180, at *2 (3d Cir. Aug. 25, 2022) (*per curiam*) ("[T]o the extent that

7

[the defendant] argues that he is entitled to compassionate release because of alleged sentencing errors, he essentially presents another challenge to the validity of his sentences, and such challenges are typically brought under 28 U.S.C. § 2255 instead."); *United States v. Wilson*, 2022 WL 15431188, at *2 n.1 (3d Cir. Oct. 27, 2022) (*per curiam*) ("§ 3582(c)(1)(A) provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity."). That rule "remains true where a defendant was sentenced as a career offender but could potentially no longer, after separate analysis, qualify as such in light of higher court holdings." *United States v. Griffin*, 2023 WL 4208673, at *2 (E.D. Pa. June 27, 2023) (collecting cases).

Therefore, Shabazz's argument regarding his length of sentence cannot serve as an extraordinary and compelling reason to justify his release.

### C.  Catch-All Provision

Finally, Shabazz argues that Section 1B.13(b)(5) justifies compassionate release. That guideline provides that "extraordinary and compelling" circumstances exist when:

> OTHER REASONS.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

Shabazz argues that, considered together, his arguments addressed above and his recent rehabilitation should warrant release. Even assuming that Shabazz has been wholly rehabilitated, an assumption that the Government roundly disputes, "Congress has explicitly instructed that a defendant's rehabilitation 'shall not be considered an extraordinary and compelling reason' warranting compassionate release." *Carter*, 711 F.Supp. at 441 (quoting 28 U.S.C. § 994(t)). And Section 1B1.13(c) prevents a court from considering Shabazz's length-of-sentence argument in addressing a defendant's Motion brought pursuant to Section 1B1.13(b)(5), the Guidelines' catch-all provision. *Id.*; U.S.S.G. § 1B1.13(c) ("Except as provided in subsection

8

(b)(6), a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists . . . .").[2]

To warrant relief, Shabazz's circumstances (other than changes in law and rehabilitation) must "go 'beyond what is usual, customary, or common' and that 'irreparable harm or injustice would result if the relief is not granted.'" *Id.* (quoting *United States v. Pollard*, 2020 WL 4674126, at *6 (E.D. Pa. Aug. 12, 2020). His circumstances—namely his medical conditions—do not meet that high bar. "[T]he reasons enumerated by subsections b(1)-(4) are scenarios falling outside the experience of nearly all federal inmates, such as a terminal medical condition, dire family emergency, or abuse at the hands of a custodian." *Id.* "[B]y any measure," Shabazz's "circumstances are not 'similar in gravity' to the exceptional situations enumerated in subsections b(1)-(4)." *Id.*

### IV. CONCLUSION

Because Shabazz fails to establish "extraordinary and compelling reasons" warranting his release, his motion must be denied. 18 U.S.C. § 3582(c)(1)(A)(i).

An appropriate order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

_____
**WENDY BEETLESTONE, J.**

---

[2] In other words, Shabazz's argument predicated on Section 1B1.13(b)(6), rejected above, was the only argument in which a change in law could be considered. U.S.S.G. § 1B1.13(c). That change in law may not be reconsidered in addressing Shabazz's Section 1B1.13(b)(5) argument. *Id.*